## MARY S. LIEBING, Appellant v. MUTUAL LIFE INSURANCE COMPANY OF NEW YORK.

### Division One, January 2, 1917.

1. **LIMITATIONS: Action on Policy: Extended Insurance: Forfeiture.** The statute (Sec. 7897, R. S. 1899) expressly providing that no insurance policy "shall, after payment upon it of three annual payments, be forfeited or become void by reason of non-payment," is a part of the policy contract, as much so as if it were written into the policy, and the liability for extended insurance is a liability under the policy, the policy being simply extended by force of the statute; and a suit on a policy claimed to have been extended by payments made and the operation of the statute beyond the time of the insured's death, is a suit on the policy, and not a liability "created by a statute" in the sense in which those words are used in section 1889, Revised Statutes 1909, declaring that "an action upon a liability created by a statute other than a penalty or forfeiture" shall be barred in five years; and being an action on the policy, is not barred within ten years.

2. **INSURANCE: Notice of Death: Waiver: Claim for Extended Insurance.** The provision in Sec. 6948, R. S. 1909, that "notice of the claim and proof of the death shall be submitted to the company in the same manner as provided by the terms of the policy, within ninety days after the decease of the insured," was manifestly enacted for the benefit of the company, and is a provision that it can waive, and having been waived does not bar the beneficiary's right to assert a claim for extended insurance.

3. ————: ————: **Evidence of Waiver.** Proofs of death of the insured made by the insured's administrators on another policy within thirty days, that thereafter beneficiary's attorneys, within the time prescribed by statute, wrote the company concerning the policy in suit, claiming that the company was liable thereon, and that the company's general solicitor replied, denying liability on the policy and declaring that it had been cancelled one year before the insured died, constitute evidence of waiver of formal proofs of death.

4. ————: **Extended Insurance: Loans: Deductions Affected by Subsequent Amendment to Statute.** An insurance company is not entitled to deduct from three-fourths of the net value, ascertained by the statutory rule, any loans it had made to the insured on the policy, except loans made on account of past-premium payments; and that rule, fixed by Sec. 7897, R. S. 1899, governed a policy issued in 1901, and such policy or rule was not affected by

an amendment to the statute enacted in 1903. The binding force of a contract depends on the laws in existence when it is made.

5. ———: Cash Option in Lieu of Bonds: Allegata et Probata. Where the policy obligated the company to pay fifty one-thousand-dollar bonds, but contained a provision for a cash option of $65,250 in lieu of bonds, to be available upon condition (1) that the policy shall have matured under its terms and (2) that "all deposits previously due thereon shall have been made and the contract maintained and continued in force and effect from date of issue," the two conditions were eliminated upon the insured's death within the statutory extended period, by the statute, which was a part of the contract, and, by its force, extended the policy and bound the company "to pay the amount of the policy, the same as if there had been no default in the payment of premium, anything in the policy to the contrary notwithstanding;" and plaintiff by suing for $65,250 in money and offering the policy in evidence as proof of the contract did not plead one contract and prove another.

6. ———: ———: Calculating Net Value. Where the policy obligated the company to pay fifty one-thousand-dollar bonds, but contained a provision for a cash option for $65,250 when the policy "matures under its terms," a calculation of the net value of the policy based on the assumption that it was one for $65,250 is not wrong, for the policy, by the statute, which is a part of the contract, matured "under its terms" when the insured died within the extended period.

7. ———: Net Value: Gross or Net Premium. Gross premium consists of the net premium plus loading for expenses and contingencies; net premium represents the cost of insurance; and the insured's proportion of the "cost of insurance" is the amount he must pay to meet his share of maturing policies; when that is ascertained, according to the mortality tables, and distributed over the premium-paying period, the early payments obviously exceed the cost, and this excess constitutes the reserve or net value, and the actuary does not use gross premiums as the basis of his calculations of net values.

8. ———: Forfeiture: Statute. In view of the provisions of Sec. 7898, R. S. 1899, the rule of some courts that an insurance policy containing no provision that non-payment of premiums shall work a forfeiture will not be held to be forfeited by reason of such non-payment, has no application to a suit upon an extended policy, even though is contains a forfeiture clause; for this statute itself is a non-forfeiture law, constitutes a part of the policy, is mandatory, and covers the whole matter.

Appeal from St. Louis City Circuit Court.—*Hon. George C. Hitchcock,* Judge.

REMANDED (*with directions*).

*James J. O'Donohoe* for appellant.

(1) Sec. 7897, R. S. 1899, was in force when the policy in suit was issued and the same entered into and became a part thereof as much so as if copied therein. Hence the full three-fourths of the net or reserve value of the policy is applicable to purchase term insurance, for the outstanding loan is not deductible. The amendatory Act of 1903 (Laws 1903, p. 208) is inapplicable. Smith v. Ins. Co., 173 Mo. 329; Burridge v. Ins. Co., 211 Mo. 158; Whittaker v. Ins. Co., 133 Mo. App. 664; Christensen v. Ins. Co., 152 Mo. App. 551; Paschedag v. Ins. Co., 155 Mo. App. 185; Christensen v. Ins. Co., 160 Mo. App. 486; Gillen v. Ins. Co., 178 Mo. App. 89; Blum v. Ins. Co., 197 Mo. 513. It is also well settled that loans are not deductible in the absence of statute providing therefor. Ins. Co. v. Wallace, 93 Ind. 7; Ins. Co. v. Ross, 93 Ga. 205; Ins. Co. v. Little, 56 Ind. 405; Ins. Co. v. Dutcher, 95 U. S. 269; Ins. Co. v. Curry, 115 Ky. 100; Ins. Co. Woods, 39 N. E. (Ind.) 206; Ins. Co. v. Wright, 126 Fed. 88. (2) There is no forfeiture stipulation in the policy for either non-poyment of premium or failure to pay loans and none should be supplied by construction. Haas v. Ins. Co., 84 Neb. 682; Tetley v. McElmurry, 201 Mo. 394; Gruwell v. K. & L. of Security, 126 Mo. App. 496; McCollom v. Ins. Co., 61 Mo. App. 352; Ins. Co. v. Statham, 93 U. S. 24. The provision in the loan agreement authorizing defendant to cancel the policy and apply the cash surrender value thereof to repay the loan contravenes Sec. 7897, R. S. 1899, and is void. Gillen v. Ins. Co., 178 Mo. App. 89. The loan agreement cannot enlarge on the policy. Francis v. Ins. Co., 243 Pa. 380; Bozeman's Admr. v. Ins. Co., 113 S. W. (Ky.) 836. All defenses are eliminated by the incontestability stipulation. Harris v. Ins. Co., 248 Mo. 304. Since the death of the insured occurred within the term of temporary insurance as determined under the nonforfeiture laws of Missouri, the defendant is bound to pay the amount of the policy the same as if there had

been no default in the payment of deposits, anything in the option stipulation to the contrary notwithstanding. Sec. 7899, R. S. 1899; Sec. 6948, R. S. 1909; Havens v. Fire Ins. Co., 123 Mo. 403; Marshal v. Ins. Co., 80 Mo. App. 18; Williams v. Ins. Co., 73 Mo. App. 607; Baker v. Assurance Co., 57 Mo. App. 559; Ampleman v. Ins. Co., 35 Mo. App. 308. A policy issued in Missouri "shall specify the exact sum of money which it promises to pay." Sec. 7903, R. S. 1899; Sec. 6952, R. S. 1909; Sec. 7925, R. S. 1899; Sec. 6972, R. S. 1909. (3) No act or amendatory act has application to the rights of parties to a contract entered into before the same became operative. Sec. 10, art. 1, U. S. Constitution; Sec. 15, art 2, Mo. Constitution; Jamison v. Zauch, 227 Mo. 406; Vanata v. Johnson, 170 Mo. 269; Fisher v. Patton, 134 Mo. 32. (4) To require the defendant to apply three-fourths of the reserve value of Missouri policies as commanded by the non-forfeiture statute is no violation of the due process of law or the equal protection of the law clauses of either the State or National Constitutions. Burridge v. Ins. Co., 211 Mo. 158; Kennard v. La., 92 U. S. 480; Davidson v. New Orleans, 96 U. S. 97; Head v. Mfg. Co., 113 U. S. 9. (5) Sec. 7899, R. S. 1899, names no penalty for failure to make claim or furnish proof within ninety days after the death of the insured and none is supplied by construction. State ex rel. v. Swanger, 212 Mo. 472; Dezell v. Fidelity & Casualty Co., 176 Mo. 253; Tetley v. McElmurry, 201 Mo. 394; Gruwell v. K. & L. of Security, 126 Mo. App. 496. Proofs of death were dispensed with by defendant receiving and accepting proofs under another policy. Lowenstein v. Ins. Co., 227 Mo. 100; Ins. Co., v. Ins. Co., 97 Pa., St. 15; Dakin v. Ins. Co., 77 N. Y. 600; Richards on Insurance, p. 411. The right, if it existed, to require claim to be made and proof of death to be furnished within ninety days after the death of the insured was waived prior to the insured's death by defendant's claim of right to appropriate the reserve value of the policy to repay the loan, and its pronounced position, namely,

that the policy had no value and was canceled. Walker v. Maccabees, 177 Mo. App. 52; Fischer v. K. & L. of Security, 190 Mo. App. 615. Want of claim and proofs of death were waived by the insurer disclaiming liability on other grounds. Dezell v. Ins. Co., 176 Mo. 253; Hollenbeck v. Ins. Co., 133 Mo. App. 57; Weber v. Ancient Order of Pyramids, 104 Mo. App. 729; Keller v. Ins. Co., 95 Mo. App. 627; Welsh v. Guaranty Fund Life Soc., 81 Mo. App. 30; Mensing v. Ins. Co., 36 Mo. App. 602; Ins. Co. v. Elliott, 108 N. E. 784. At no time after the death of the insured would the defendant have admitted liability or accepted proofs of death, and hence making claim or offering to make proofs would be wholly idle formalities, and "the law never requires the doing of a useless act." Printing Co. v. St. Louis, 213 Mo. 43; Statler v. Railroad, 200 Mo. 142; Bank v. Blackwelder, 81 Mo. App. 432; Coscarels v. Ins. Co., 175 Mo. App. 139. They were waived by the insurer defending on other grounds. Dezell v. Ins. Co., 176 Mo. 253; Ins. Co. v. Kyle, 11 Mo. 278; Welsh v. Life Soc., 81 Mo. App. 30; Johnson v. Casualty Co., 122 Mo. App. 369; Meisenbach v. Maccabees, 140 Mo. App. 76. And such waiver may be made after the lapse of the stipulated time for the delivery of the proofs of death and need not be based upon a new agreement nor combine the elements of an estoppel. Dezell v. Ins. Co., 176 Mo. 253; Hamilton v. Railroad, 80 Mo. App. 601; Crenshaw v. Ins. Co., 71 Mo. App. 48; Fink v. Ins. Co., 66 Mo. App. 513. Statutes, like policy provisions, can be waived. McLeod v. Ins. Co., 190 Mo. App. 653; Chandler v. Ins. Co., 180 Mo. App. 394; Lewis v. Ins. Co., 52 Me. 492; Neilson v. Assur. Soc., 139 Cal. 332; Ins. Co. v. Wenning, 58 Fed. 541. (6) This action is founded on a written policy of insurance for the payment of money or property and falls within the ten-year section of the Statute of Limitations, namely, Sec. 4272, R. S. 1899, now Sec. 1888, R. S. 1909. State ex rel. v. Brown, 208 Mo. 613; Curtis v. Sexton, 201 Mo. 230; Bridges v. Stephens, 132 Mo. 552; Carr v. Thompson, 67 Mo. 472; Martin v. Knapp, 45 Mo. 48; Moorman v. Sharp,

269 Mo.—33

35 Mo. 283; Reyburn v. Casey, 29 Mo. 129; Howe v. Mittleberg, 96 Mo. App. 490; Shinn v. Wooderson, 95 Mo. App. 6; Miner & Frees v. Howard, 93 Mo. App. 569.

*Fordyce, Holliday & White* for respondent; *Frederick L. Allen* of counsel.

(1) The action of the trial court in refusing to set aside the nonsuit should be affirmed if for any reason the plaintiff was not entitled to go to the jury. Pope v. Boyle, 98 Mo. 531. (2) This action was upon a liability created by statute other than a penalty or forfeiture, and hence barred in five years from the death of the insured. R. S. 1909, secs. 1887, 1888, 1889; R. S. 1899, secs. 7897, 7898, 7899, 7900; Assurance Soc. v. Pettus, 140 U. S. 226; Price v. Conn. Mutual, 48 Mo. App. 293; Smith v. Ins. Co., 173 Mo. 329; Burridge v. Insurance Co., 211 Mo. 178; Dezell v. Fidelity & Casualty Co., 176 Mo. 265; 25 Cyc. 850; Turner v. Burns, 42 Mo. App. 96; Pleadwell v. Glass Co., 151 Mo. App. 63. (3) The plaintiff was not entitled to claim extended insurance under the non-forfeiture laws of the State of Missouri since she had failed to submit notice of the claim and proof of death in the same manner as provided by the terms of the policy within ninety days of the death of the insured. R. S. 1899, sec. 7899; R. S. 1909, sec. 8057; State ex rel. v. Roach, 258 Mo. 553; State ex rel. v. St. Louis, 174 Mo. 145. (4) The plaintiff failed to make a case for the jury since neither the contract nor the right to extended insurance was proved as alleged. Lindsay v. Morris, 30 Mo. 412; Jackson v. Hardin, 83 Mo. 186; Dunlap v. Kelly, 105 Mo. App. 6; Webster v. Nance, 183 Mo. App. 217; Price v. Connecticut Mutual, 48 Mo. App. 295.

BLAIR, J.—This is an appeal from an order overruling a motion to set aside an involuntary nonsuit taken by appellant in the circuit court of the city of St. Louis in an action she instituted on an insurance policy issued by respondent, September 29, 1901, on the life of

Frederick W. V. Blees, the then husband of appellant.

Respondent, in its answer, admitted its corporate capacity and that it was engaged in the life insurance business; that it issued the policy sued on; that the annual premiums (each amounting to $4291.50) were paid in September 1901, 1902, 1903 and 1904, but denies any premium was thereafter paid; that in March, 1904, the policy was, with its consent, duly assigned by the insured to his wife, this appellant; and that Frederick W. V. Blees, the insured, died September 8, 1906. The answer contained several affirmative defenses; (1) that insured and his wife, in October, 1904, secured from respondent a loan equal to the full surrender value of the policy September 29, 1905, to-wit, $9550, the proceeds "divided as follows: $4291.50 to pay premium due September 29, 1904; $468 for interest; and $4790.50 paid Blees by company's check; that the borrowers signed a loan agreement authorizing respondent, at its option, in case of default in payment of the loan September 29, 1905, without demand and without notice, to apply cash surrender "consideration of $9550 to the payment of loan and interest" and cancel the policy; that the loan was not paid and respondent exercised its option and so applied the cash surrender value to the payment of the loan and canceled the policy, and that it was thereby rendered void; (2) that the repayment of the loan mentioned under "(1)" supra, was a condition of the insurance provided for in the policy; that the failure of Blees to repay violated this condition; that this was a violation of the "condition of the insurance other than the non-payment of premiums" within the meaning of section 6948, Revised Statutes 1909 (Sec. 7899, R. S. 1899) and for this reason the policy had lapsed and been canceled and there was no liability thereon; (3) that while the policy was issued in 1901, but two premiums had been paid prior to the Act of 1903, whereby section 7897, Revised Statutes 1899, was amended to permit indebtedness other than that for past due premiums and interest to be deducted from three-fourths of the net value of the

policy under that section; that the amendment is applicable and that when deductions are made according thereto there was nothing remaining and the insurance was not extended by the act, but lapsed, and no recovery can be had for that reason; (4) that no proof of death was made in ninety days as provided by section 7899, Revised Statutes 1899, and for that reason the action cannot be maintained; and (5) that, in any event, if there be a cause of action, it is for extended insurance and arose in September, 1906, while the action was not commenced for more than six years thereafter, and that the liability under the non-forfeiture laws is one created by statute and, therefore, barred in five years (Sec. 1899, R. S. 1909), and for that reason appellant must fail.

In the reply waiver of proof of death was pleaded, in addition to a general denial.

The policy consisted of a promise to deliver to the assured, his executors, administrators or assigns, fifty $1,000 bonds, payable in gold coin twenty years after issuance, with five per cent. interest. The delivery of the bonds was conditioned upon the maintenance of the policy in force and effect and proof of the death of the insured. It concluded thus: "This contract is subject to the mutual agreements endorsed hereon and is issued on condition that on its delivery" and each year thereafter during the first ten years of the continuance of the contract, insured pay the respondent company $4291.50. The "mutual agreements" endorsed on the policy provided for (1) place of payment of premiums; (2) thirty days grace in payment of premiums; (3) for automatic paid-up insurance after three payments in case of failure "to make any subsequent deposit," i. e. pay premiums, provided no loan had been made on the policy; (4) for extended insurance, after three years, on failure to make any subsequent deposit, on conditions and for periods stated; (5) for cash surrender value on conditions and for amounts set out; (6) for loans on the policy on given

conditions; (7) for apportionment of surplus; (8) as follows:

"CASH OPTION IN LIEU OF BONDS.—It is hereby mutually understood and agreed between all the parties hereto, that the beneficiary under this contract shall have the option of accepting in settlement of this contract, when it matures under its terms, the sum of sixty-five thousand two hundred and fifty gold dollars in lieu of the insurance of fifty thousand dollars of bonds as stipulated in said contract, provided all deposits previously due thereon shall have been made and the contract maintained in full force and effect from date of issue."

These were followed by (9) restrictions as to service in army and navy; (10) provision that understatement of age in application should result in an "equitable adjustment of the amount of the insurance or other benefit," and then by this paragraph:

"INCONTESTABILITY.—After two years from date of issue this contract shall be incontestable if the deposits shall have been made."

Space may be saved by stating other necessary facts in connection with the discussion of questions to which they are relevant.

I. The plea of the Statute of Limitations presents the question whether the action is one on a "writing . . . for the payment of money" (Sec. 1888, R. S. 1909) or on a liability "created by a statute other than a penalty or forfeiture" (Sec. 1889, R. S. 1909). Appellant contends her action is upon the policy, as extended by the non-forfeiture law of the State in force when the policy was issued (Sec. 7897 et seq., R. S. 1899), while respondent insists that the non-forfeiture sections mentioned give the right of action; that no cause of action could exist save for them and, therefore, that the liability appellant attempts to enforce is one "created by statute" and was barred five years after the death of the insured and over a year before suit brought.

*Limitations.*

Counsel for respondent practically concede that under principles announced in previous decisions of this court the sections in question (Secs. 7898 et seq.) were read into and became a part of the policy issued to Blees. Their position is that these statutes are undoubtedly mandatory (Equitable Life Assurance Soc. v. Clements, 140 U. S. l. c. 231; Price v. Conn. Mut. Life Ins. Co., 48 Mo. App. l. c. 293, 294; Burridge v. Ins. Co., 211 Mo. l. c. 178, and cases cited); that their provisions override the freedom of the parties to contract, at the time the policy is issued or afterward, in contravention of them (same authorities), and that in case of conflict between the statute and the policy or contract, the statute controls; wherefore, counsel contend, the very fact that the statute does override conflicting policy stipulations demonstrates that an action for extended insurance is an action on a liability created by the statute and not one on the policy. The answer to this contention is found in the fact that the statute is a part of the policy contract, as much so, for the purpose of an action on the policy, as any other. This is the effect of our previous holdings and is put beyond question by the terms of the statute itself which make it clear that the liability for extended insurance is a liability under the policy, the policy itself being simply extended by force of the statute. The statute (Sec. 7897, R. S. 1899) expressly provides that *no policy* "shall, after payment upon it of three annual payments, *be forfeited or become void* by reason of non-payment," but shall be commuted as therein set forth; a further provision is that the temporary insurance is to be for the "full amount *written in the policy.*" No provision for the surrender of the policy is found in this section. In section 7898, giving a right to demand a paid-up policy, it is provided that the original policy shall be delivered up and canceled. In section 7899, Revised Statutes 1899, it was and, so far as this policy is concerned, is expressly provided that: "If the death of the insured occur within the term of temporary insurance covered by the value of the policy as determined

by section 7897, and if no condition of the insurance other than the payment of premiums shall have been violated by the insured, the company shall be·bound to pay the amount of the policy, *the same as if there had been no default in the payment of premiums,* anything in the policy to the contrary notwithstanding.'' The statute then requires proof of death, according to the manner provided by the terms of the policy, within ninety days, and then provides that the company may ''deduct from the amount *insured in the policy''* all unpaid premiums, with six per cent. interest compounded, ''including the whole of the year's premium in which the death occurs,'' but such premium shall in no case exceed the ordinary life premium for the age *at* issue'' (doubtless of the policy) ''with interest,'' etc. It is apparent from these excerpts that the Legislature contemplated the extension of the policy itself on the terms provided in the sections mentioned. [Equitable Life Soc. v. Clements, 140 U. S. 1. c. 232 et seq.] The policy, under these sections, when issued, carried with it and as a part of it an obligation to pay according to the terms of the statute. This action is one on the policy and not on a liability created by a statute in the sense of section 1889, Revised Statutes 1909. The cases cited from other states are not in point. Our statute pertaining to statutory liabilities (Sec. 1889) is construed with the preceding section pertaining to written contracts (Sec. 1888, R. S. 1909) and this section is broader than that in force in most other states, restricting the application of section 1889 with respect to liabilities ''created by a statute'' and leading to an interpretation of those words (State ex rel. v. Brown, 208 Mo. 1. c. 616 et seq. and cases cited) which does not accord with the interpretation given in other states, as shown by the cases cited by respondent. In the Georgia case cited (Ga. Mas. Ins. Co. v. Davis, 63 Ga. 471) the action was upon an instrument certifying that decedent was a member of appellant company and was ''entitled to all the benefits of said association upon his paying one dollar and ten cents'' after notice of death of any other member. The incorporating act

defined the benefits to be paid, and the limitation statute involved provided that "all suits for the enforcement of rights under statutes, *acts of incorporation,* or by operation of law shall be brought," etc. The court held this limitation, and not that with respect to actions on written contracts, applicable. The decision is obviously not in point. The ten-year statute applies in this case and the action is not barred.

II. It is insisted, in effect, that the provision in section 7899, Revised Statutes 1899 (now Sec. 6948, R. S. 1909) that "notice of the claim and proof of the death shall be submitted to the company in the same manner as provided by the terms of the policy, within ninety days after the decease of the insured," defines a condition precedent to the insured's right to assert a claim for extended insurance and that this condition cannot be waived by the company. After a careful examination of respondent's argument on this point, we are of opinion that the decisions in two courts of appeals (Chandler v. Ins. Co., 180 Mo. App. l. c. 398, 399; McLeod v. Ins. Co., 190 Mo. App. l. c. 659) are correct, and hold, as those courts did, that the company may waive this provision, manifestly enacted for its benefit.

Waiver of Notice.

III. There was evidence that formal proofs of death were made to respondent by the insured's administrators on another policy. In fact, the proofs were offered in evidence, but rejected because the witness had testified to their substance. We shall deal with them as a part of appellant's evidence. These were furnished respondent in October, 1906, thirty days after the death of the insured. Subsequently, attorneys for appellant, within the ninety-day period, prescribed by the statute, wrote respondent concerning the policy in suit, claiming respondent was liable thereon. Respondent's general solicitor replied, denying liability on the policy and declaring it had been cancelel in September, 1905, one year before the insured died. That these facts constituted evidence of waiver of formal proofs of death is

not disputable. [Loewenstein v. Ins. Co., 227 Mo. 1. c. 114 et seq.; Dezell v. Fidelity & Casualty Co., 176 Mo. 1. c. 267 et seq.]

IV. The statute (Sec. 7897, R. S. 1899) expressly provided, and this court long since held (Smith v. Mut. Ben. Life Ins. Co., 173 Mo. 329), the company was not entitled, under that section, to deduct from three-fourths of the net value, ascertained by the statutory rule, any loans it had made to the insured on the policy, except loans on account of past premium payments. That section was amended in 1903. It is contended the amended section, which authorizes the deduction of all loans on the policy, which have been made by the company to the assured, governs this case. The policy was issued in 1901, and the statute became a part of it. The Legislature could amend the statute, but could not impair the obligation of the contract of insurance already issued and in force. The case is not affected by the amendment of the statute in 1903.

*Deductions for Loans.*

In Jarman v. Knights Templars' & Masons' Life Indemnity Co., 95 Fed. 1. c. 73, Judge PHILIPS, dealing with a like question, quoted, with approval, from McCracken v. Hayward, 2 How. 1. c. 612, as follows:

"The obligation of a contract consists in its binding force on the party who makes it. This depends on the laws in existence when it is made. These are necessarily referred to in all contracts, and forming a part of them, as the measure of the obligation to perform them by the one party and the right acquired by the other . . . . If any subsequent law affect to diminish the duty, or to impair the right, it necessarily bears on the obligation of the contract, in favor of one party to the injury of the other; hence any law which in its operation amounts to a denial or obstruction of the rights accruing by the contract, though professing to act only on the remedy, is directly obnoxious to the prohibition of the Constitution."

The amendatory Act of 1903 was and is prospective in its operation and in no wise affects the policy in suit. [Burridge v. Ins. Co., 211 Mo. 1. c. 173; Christensen v. Ins. Co., 160 Mo. App. 1. c. 493.]

V. Respondent insists that appellant pleaded one contract and proved another. It is argued that the policy proved was one whereby respondent contracted, on named conditions, to deliver certain gold bonds, whereas the petition counts on a policy for the payment of $62,500 in money. This position is grounded upon the contention that the policy provision for a "Cash Option in Lieu of Bonds" is available to appellant only upon the two *conditions,* that (1) the policy shall have matured under its terms, and (2) "all deposits previously due thereon shall have been made and the contract maintained in full force and effect from date of issue."

Cash Instead of Bonds.

The argument advanced assumes the correctness of the contention counsel had previously made that this action is based upon the statute, and is on a liability arising upon the non-forfeiture statute, which contention was overruled in a preceding paragraph. The statute being a part of the agreement and, by its force, extending the policy and binding the company "to pay the amount of the policy, the same as if there had been no default in the payment of premium, *anything in the policy* to the contrary notwithstanding" (Sec. 7899, R. S. 1899; Sec. 6948, R. S. 1909), the death of the insured during the period of extended insurance, matured the policy "according to its terms" and fulfilled the first condition in the cash option paragraph. To hold otherwise would be to permit provisions in the policy to nullify the express words of the statute. The same considerations lead to a like conclusion with respect to the second condition. If the fact that a premium payment has not been made avoids appellant's right to avail herself of the cash-option feature, the very thing the statute declares shall *not* affect her rights is allowed to destroy one of them.

It is true the policy is to be construed as a whole. In construing it, however, the statute must be kept in mind, and portions of the policy eliminated by it cannot be invoked to effect the construction of what remains and of the statute itself.

VI. It has been held courts will not take judicial notice of the net value of insurance policies to which the non-forfeiture statutes apply. [Price v. Conn. Mut. Ins. Co., 48 Mo. App. l. c. 295; Leeker v. Prudential Ins. Co., 154 Mo. App. l. c. 450, 163 Mo. App. 523.] Appellant called an actuary as a witness and he gave expert testimony as to the method of calculating net values and made the calculation on the policy in suit. It is objected he based his calculation on the assumption the policy in suit was one for $65,250, and that this was wrong. This contention rests upon the same views which constitute the basis of the position of respondent discussed in the preceding paragraph. For the reasons there given we hold the assumption is incorrect and the actuary's testimony was pertinent enough.

*Calculating Net Value.*

It is further contended this testimony must be disregarded as unworthy of belief. It is insisted this follows from the fact that the witness testified he did not use, in his calculation, the gross or policy premium. The gross premium consists of the net premium plus loading for expenses and contingencies, i. e. the net premium represents the "cost of insurance." The mortality tables furnish a basis for calculating the average duration of life of persons of a given age. Given this average duration or expectancy, the rate of interest to be used, the age of the insured and the amount of his policy, the amount such person must pay to meet his share of maturing policies is ascertainable. This is his proportion of the "cost of insurance" as that term is employed. When that is ascertained and distributed over the term of his expectancy in level or equal premium payments, or over the premium-paying period, as in this case, the

*Gross and Net Premiums.*

early payments obviously will exceed this cost and the later ones fall short of it, since the risk in every case increases with advancing years. In the early years of the premium-paying period the policy-holder, therefor, under a policy like this, pays in an excess over the cost of insurance and this constitutes the reserve or net value. The loading has nothing to do with the problem. The witness was right.

VII. In Haas v. Insurance Co., 84 Neb. 682, the cases are collected which announce the doctrine that forfeitures are not favored and will not be aided by construction, and that an insurance policy containing no provision that non-payment of premiums shall work a forfeiture will not be held to be forfeited by reason of such non-payment. It is argued by appellant's counsel that this rule applies to this case. The argument ignores the fact that the non-forfeiture law (Sec. 7897, R. S. 1899, et seq.) constitutes a part of this policy and that it makes full and explicit provision as to what effect the failure to pay premiums shall have in cases falling within its purview. It is as applicable to policies which do not contain forfeiture clauses as those which do. It is mandatory. It disposes of the whole matter fixing with mathematical certainty the period of extension for policies to which it applies. It leaves no room or opportunity for applying, in the manner desired, the doctrine of the Haas case.

The incontestability clause, upon which counsel also relies, contending it excludes a failure to pay premiums as a ground of defense, also is to be read in the light of the whole policy, including the statute, and when that is done counsel's construction cannot be regarded as sound.

VIII. The issuance of the policy, the payment of four annual premiums, the death of the insured and the assignment of the policy to appellant having been admitted by the answer, and there having been evidence

Nonsuit.

tending to prove Blees died during the period the net value of the policy extended the insurance, and

that proof of death was waived, this was not a case the court should have taken from the jury. The cause is remanded to the trial court with directions to set aside the order overruling the motion to set aside the nonsuit and to sustain that motion and to proceed with the cause in a manner not out of accord with this opinion. All concur.