**FOX v. MUTUAL BEN. LIFE INS. CO.**

No. 11451.

Circuit Court of Appeals, Eighth Circuit.

Nov. 28, 1939.

Walter A. Raymond, of Kansas City, Mo. (G. W. Duvall, of Kansas City, Mo., on the brief), for appellant.

Richard S. Righter, of Kansas City, Mo. (Horace F. Blackwell, Jr., of Kansas City, Mo., Edward O. Stanley, Jr., of Newark, N. J., and Lathrop, Crane, Reynolds, Sawyer & Mersereau, of Kansas City, Mo., on the brief), for appellee.

Kenneth E. Midgley, of Kansas City, Mo. (Henry I. Eager and George J. Winger, both of Kansas City, Mo., on the brief), for amici curiae.

E. R. Morrison, Homer H. Berger, and Douglas Stripp, all of Kansas City, Mo., filed brief as amici curiae.

Harry A. Hall, of Kansas City, Mo., as amicus curiae.

Before THOMAS, and VAN VALKENBURGH, Circuit Judges, and DEWEY, District Judge.

THOMAS, Circuit Judge.

This is an appeal from a judgment denying recovery on a policy of life insurance. The appellant is the widow of the insured, Frederick A. Fox, and the beneficiary named in the policy.

The facts are as follows. On February 7, 1927, the company issued its ordinary life policy No. 1,285,009 in the face amount of $5,000 to the insured at age 40. The policy provided for a level quarterly premium of $40.20. Dividends were to be used in reduction of premiums. The premiums for the first four quarters were paid in cash and thereafter by dividends, loans and part cash until the premium due February 7, 1930. This premium was not paid when due or within the grace period of 31 days. On March 31, 1930, or some days after the expiration of the period of grace, the policy was reinstated by arrangement of the parties. The subsequent premiums were paid by means of dividends, loans and a small amount of cash until the premium due May 7, 1931. According to a stipulation of facts the policy lapsed by its terms for failure to pay the premium due on that date. Following the terms of the contract, the company calculated the cash surrender value of the policy on May 7, 1931, deducted the net indebtedness of $312.68 and assigned it a net value of $39.23. Under the directions of the policy this sum was used to purchase extended insurance for a period of 290 days from May 7, 1931. The insured died on May 7, 1932.

The trial court found that the policy had lapsed for non-payment of the premium due May 7, 1931, and that after deducting the outstanding indebtedness the net value of the policy on that date was $39.23, or an amount sufficient to purchase extended insurance for 290 days. As a conclusion of law the court held that all liability under the policy had ceased prior to the insured's death because the duration of the period of extended insurance to which the insured was entitled on the date of lapse was not sufficient to carry it beyond the date of death whether calculated according to the method provided in the policy or that provided by the Missouri nonforfeiture statute, section 5741, R.S.Mo.1929, Mo.St.Ann. § 5741, p. 4388.

The appellant contends: (1) That the Missouri nonforfeiture statute required the company to use the gross rather than the net premium in computing the net value of the policy on May 7, 1931, and that so computed the policy had a net value sufficient in amount to purchase extended insurance beyond the date of the insured's death; (2) that even by the use of the net premium the policy, by its terms, had a net value on February 7, 1930, adequate to accomplish this result and that the nonforfeiture statute imposed a mandatory obligation on the company to place such extended insurance in force on that date. The appellee contends that neither the policy nor the statute require the use of gross premiums in computing net value. It further contends that the appellant is not entitled to urge, on this appeal, that the policy lapsed on February 7, 1930.

Section 5741 of the Missouri nonforfeiture statute provides as follows:

"No policies of insurance on life * * * shall, after payment upon it of three or more annual payments, be forfeited or become void by reason of non-payment of premiums thereon, but it shall be subject to the following rules of commutation, to-wit: The net value of the policy, when the premium becomes due and is not paid, shall be computed upon the actuaries' or combined experience table of mortality with four per cent interest per annum, and after deducting from three-fourths of such net value the unpaid portion of any notes given on account of past premium payments on said policy and any other indebtedness to the company secured by said policy, * * * the balance shall be taken as a net single premium for tempo-

rary insurance (extended insurance).
\* \* \*"

■ The policy is a Missouri contract and the construction given the statute by the courts of Missouri is conclusive. New York Life Insurance Co. v. Cravens, 178 U.S. 389, 20 S.Ct. 962, 44 L.Ed. 1116; Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Turner v. New York Life Ins. Co., 8 Cir., 100 F.2d 193; New York Life Ins. Co. v. Levin, 8 Cir., 102 F.2d 403. Whether the appellee was right in using the net premium as a basis for evaluating the policy on the date of lapse or whether the nonforfeiture statute required it to base the computation on the gross premium actually paid must turn upon the interpretation placed upon the words "net value" by the Missouri decisions. The respective contentions as to the meaning of the expression as used in the statute may be more clearly outlined by a brief reference to certain of the general principles governing the computation of life insurance premiums. These principles are not in dispute and a more complete discussion of them may be found in the Missouri cases cited hereafter.

The gross premium, or the amount charged in the contract of life insurance, ordinarily includes two elements, that is, the net premium and the loading. The loading, or the amount arbitrarily added to the net premium, is intended to cover the expenses of the company. In a stock company it may also be a source of profit and in a mutual company, a source from which dividends may be paid to the insured. Disregarding this loading charge for the time being, we may turn to a consideration of the net premium element. It is well known that net premiums for life insurance are calculated by means of a mortality table and an interest rate. If computed as a single payment at the beginning of the insurance period it is termed a net single premium and is that premium which, if exacted from a group of policyholders and immediately invested at the assumed rate of interest, will yield in the aggregate a sum exactly sufficient to pay all death claims as they mature providing the mortality rate is in accord with the table used. Ordinarily it is not convenient for the individual insured to pay the insurance charge in a single payment at the beginning of the period. If, however, the company should compute the amount of the natural premium, or the actual sum necessary to meet maturing death claims each year, and should charge each policyholder only his proportionate share of the burden, the amount of the annual premium of each individual insured would increase as the mortality risk increases with advancing age. In the later years of life the cost of the insurance would be prohibitive to a large class of policyholders whose earning power had decreased with old age. To avoid this situation the insurance companies compute the amount of a net level annual premium, which, if exacted from a group of policyholders and increased by interest, will yield a sum sufficient to satisfy all death claims. The result is generally referred to as the net, or net level, premium of the policy. Necessarily the net premium exceeds the natural premium or the amount required to meet the mortality risk in the early years of the life of the policy and is less than the amount needed in the later years. The income derived from this source must therefore be carried forward and the accumulated surplus, augmented by interest, must be kept as a reserve to meet the increasing obligation of the mortality risk in the future.

It is at this point that the present dispute arises. The company contends that the net value of the policy at any particular time is simply the reserve that has been accumulated in the early years of the life of the policy as a result of the excess of the net premium over the natural premium, or the actual sum necessary to meet the mortality risk. Without attempting to set forth the actuarial method of computing it this is the result of the net premium method of determining the net value of a policy on any particular date. It of course ignores the loading added to the net premium in fixing the gross premium charged in the policy.

The appellant contends that the gross premium charged by the terms of the contract must be used as the basis for determining the net value of the policy. The actuary called as a witness for the appellant testified that the "net value" of a policy and the "reserve" are not necessarily one and the same. He defined the reserve as "that accumulation over and above the net natural premium deducted from a net level premium formulation, according to a form or class of policy." This is substantially the generally accepted meaning of reserve as we have outlined it. The witness further testified that if the actual premium charged by the company is in excess

of the net level premium the net value of the policy will be greater than the reserve. He defined net value as "the amount of premiums paid improved at a given rate of interest in excess of the net (natural) premium or cost of insurance." Counsel for the appellant say that "under the gross premium method the net value of a policy is computed on the basis of the difference between the net premium (the reference here is apparently to the natural premium for each one year term during the life of the policy) and the gross or total premium improved at 4% per annum."

These definitions indicate that according to appellant's contention interest must be computed on the gross or policy premium rather than upon the difference between the gross premium and the natural premium, but, as nearly as we can determine from the evidence, the appellant's actuary actually deducted for each policy year the net cost of one year's term insurance from the gross policy premium, improved the difference at four per cent per annum, and declared the aggregate of the yearly balances to be the net value of the policy. By taking three-fourths of this sum as directed by the statute and deducting from that result the net indebtedness under the policy the appellant arrived at a net value sufficient in amount to purchase extended insurance from May 7, 1931, to a date beyond that of the insured's death.

■ Both the net premium and the gross premium methods have been recognized by authorities on life insurance as modes of evaluating policies. Willey, Principles and Practice of Life Insurance (8th ed.) 29; Andras, Insurance Guide and Handbook, (5th ed.) 160; Low, 13 Encyclopedia Britannica 177. The net premium is generally regarded as the strict actuarial basis for computing net value. Andras, supra; Rose v. Franklin Life Insurance Co., 153 Mo. App. 90, 132 S.W. 613. If gross premiums are used as a basis for the computation a reasonable deduction must be made for operating expenses. Willey, supra; Andras, supra. When the gross premium method is used prospectively by the company as a means of estimating its assets and liabilities it yields results substantially similar to calculations based on net premiums provided a proper allowance for expenses has been made. But it is obvious that if insurance companies are compelled to calculate the value of lapsed policies retrospectively by this method they must set aside at interest the entire surplus of the gross premium over and above the natural term premium for each one year of insurance. Otherwise the company could not accumulate a sum equivalent to the net value on the date of lapse as calculated by the appellant's actuarial witness. The loading charge, or the money, collected for operating expenses, would not become available for that purpose until the lapse or the maturity of the policy. Upon lapse, it is true, a percentage of the loading charge would become available for expenses, as the statute provides that only three-fourths of the net value shall be used to purchase extended insurance. The appellant contends that the purpose of this provision in the statute was to permit the company to take a fixed allowance for its expenses. Obviously such is not the proper construction of the statute. It is apparent that the legislature intended only to prescribe a formula for determining extended insurance on a lapsed policy. In applying this formula the decisions of the Missouri courts clearly indicate that the loading contained in the gross premium is to be disregarded in computing the net value of a policy on the date of lapse.

■ The words "net value" as used in the Missouri nonforfeiture statute are technical in meaning. Rose v. Franklin Life Insurance Co., 153 Mo.App. 90, 132 S.W. 613. The word "reserve" likewise is used in a technical sense in connection with the subject of life insurance. State v. Vandiver, 213 Mo. 187, 111 S.W. 911, 918, 15 Ann.Cas. 283. The Missouri courts make no distinction between the reserve and the net value of a policy. The net value is simply the accumulation of the balances of past net premiums not absorbed in carrying the risk. Rose v. Franklin Life Insurance Co., supra. This is also the accepted meaning of reserve, and appellant's actuary so recognized it although at the same time attempting to draw a distinction between net value and reserve. Any such distinction is completely untenable and is precluded by the Missouri decisions. Net value has been held to be the equivalent of the accumulated reserve. Hutchinson v. National Life Ins. Co., 196 Mo.App. 510, 195 S.W. 66. And without exception the Missouri courts have linked the two expressions together as expressing an identical concept. Liebing v. Mutual Life Insurance Co. of N. Y., 269 Mo. 509, 191 S.W. 250; Westerman v. Supreme Lodge K. P.,

196 Mo. 670, 94 S.W. 470, 5 L.R.A.,N.S., 1114; Hutchinson v. National Life Insurance Co., supra; Fahle v. Connecticut Mut. Life Insurance Co., 155 Mo.App. 15, 134 S.W. 60; and see Mutual Reserve Life Insurance v. Roth, 8 Cir., 122 F. 853; 37 C. J. 368.

Furthermore, in Liebing v. Mutual Life Insurance Co. of N. Y., supra, the Supreme Court of Missouri said [269 Mo. 509, 191 S. W. 254]:

"Appellant called an actuary as a witness, and he gave expert testimony as to the method of calculating net values and made the calculation on the policy in suit. * * *

"It is further contended this [expert] testimony must be disregarded as unworthy of belief. It is insisted this follows from the fact that the witness testified he did not use, in his calculation, the gross or policy premium. The gross premium consists of the net premium plus loading for expenses and contingencies; i. e., the net premium represents the 'cost of insurance.' The mortality tables furnish a basis for calculating the average duration of life of persons of a given age. Given this average duration or expectancy, the rate of interest to be used, the age of the insured, and the amount of his policy, the amount such person must pay to meet his share of maturing policies is ascertainable. This is his proportion of the 'cost of insurance,' as that term is employed. When that is ascertained and distributed over the term of his expectancy in level or equal premium payments, or over the premium-paying period, as in this case, the early payments obviously will exceed this cost and the later ones fall short of it, since the risk in every case increases with advancing years. In the early years of the premium-paying period the policy holder, therefore, under a policy like this, pays in an excess over the cost of insurance, and this constitutes the reserve or net value. The loading has nothing to do with the problem. The witness was right."

This decision by the Supreme Court of Missouri is decisive of the issue; and we are not inclined to place great importance upon isolated statements in two decisions of the appellate courts of Missouri indicating that net value is to be regarded as a product of the gross premium paid diminished only by the tabular costs of insurance. Moore v. Northwestern National Life Ins. Co., 112 Mo.App. 696, 87 S.W.

988; Rose v. Franklin Life Ins. Co., supra. The actual holdings in these cases are not inconsistent with our conclusion and most of the discussion in Rose v. Franklin Life Ins. Co., supra, directly supports it.

The second contention of the appellant is that the policy was in default on February 7, 1930, as a result of the insured's failure to pay the premium due on that date or within the 31 day period of grace provided by the terms of the policy. Accordingly, the appellant urges that the nonforfeiture statute overrode the rights of the parties to make any subsequent arrangement respecting reinstatement of the policy and by its mandatory provisions put extended insurance into operation automatically at that time. In particular, the appellant contends that the company had no right to grant a loan of part of the net value of the policy to aid in the payment of this premium. The appellant's actuarial witness testified that the policy, by its terms, contained a net value sufficient in amount on February 7, 1930, to purchase extended insurance beyond the date of the insured's death.

In support of the contention that the policy actually lapsed on February 7, 1930, the appellant directs our attention to a photostatic copy of the company's record of premium payments made by the insured. This record indicates that the premium due February 7, 1930, was not paid until March 31, 1930. It also shows that the quarterly premium due November 7, 1927, was not paid when due or within the 31 day period of grace. Likewise, the premium due May 7, 1928, was not paid until July 3, 1928; the premium due August 7, 1928, was not paid until November 2, 1928; and the premium due November 7, 1928, was not paid until January 17, 1929. Whether these lapses were waived by the company or whether the insured took the necessary steps to reinstate the policy as provided by its terms does not appear. But the record does indicate that following the lapse of August 7, 1928, the premium due on that date was paid by means of a policy loan and a dividend. With the exception of a few small cash payments this same procedure was followed as to all the subsequent premium payments including that of February 7, 1930. In view of this situation it is difficult to understand the appellant's contention that February 7, 1930, should be selected as the date upon which the statute automatically placed extended

insurance in force. It is possible that controlling facts have not been called to our attention and we shall, therefore, base our decision upon another ground.

The appellant relies upon Heuring v. Central States Life Ins. Co. of St. Louis, 232 Mo.App. 731, 120 S.W.2d 176. The policy in suit does not contain an automatic premium loan provision such as that held void in the cited case. This difference is perhaps sufficient to distinguish that case from the instant case. In any event the argument can not be raised on this appeal. The trial court found that the policy lapsed on May 7, 1931. This finding was based on a stipulation of facts introduced in evidence on the trial in the district court. The stipulation states: "The policy lapsed by its terms for failure to pay premium due May 7, 1931." In view of this stipulation by the parties the trial court can not be reversed for failing to find that the policy lapsed on some earlier date or for failure to hold that net value should have been computed as of another date.

We hold that under the construction given the Missouri nonforfeiture statute by the courts of that state the net value of the policy in suit was properly computed and applied to the purchase of extended insurance. In this instance the method provided in the policy was more favorable to the insured than that provided by statute. The judgment of the trial court is, therefore, affirmed.