Jo Ann JOHNSON, Appellant,

v.

**STATE MUTUAL LIFE ASSURANCE CO. OF AMERICA, Appellee.**

No. 90–1971.

United States Court of Appeals,
Eighth Circuit.

Submitted May 13, 1991.
Decided Aug. 21, 1991.

Alan Cohen, St. Louis, Mo., for appellant.

Wilbur L. Tomlinson, argued (John Emde on brief), St. Louis, Mo., for appellee.

Before LAY, Chief Judge, and McMILLIAN, ARNOLD, JOHN R. GIBSON, FAGG, BOWMAN, WOLLMAN, MAGILL, BEAM and LOKEN, Circuit Judges, En Banc.

LOKEN, Circuit Judge, joined by LAY, Chief Judge, and ARNOLD, BOWMAN, WOLLMAN and MAGILL, Circuit Judges.

Plaintiff Jo Ann Johnson appeals from a district court order dismissing her Complaint for group life insurance benefits. 735 F.Supp. 331. Having concluded that Johnson's Complaint is governed by Missouri's ten-year contract statute of limitations, Mo.Ann.Stat. § 516.110(1), instead of the five-year contract statute of limitations applied by the district court, Mo.Ann.Stat. § 516.120(1), we reverse.

In October 1979, Cleveland Johnson died of a gunshot wound. At the time of his death, Mr. Johnson was a policyholder under a group policy issued by defendant State Mutual Life Assurance Co. of America to his employer, Terminal Railroad Association of St. Louis. Plaintiff, Johnson's wife, was the policy beneficiary. The employer promptly gave defendant proof of death and demanded payment to plaintiff as beneficiary of the amount owing in the case of accidental death. Thereafter, defendant paid plaintiff the death benefits under a second policy but refused to pay the $44,000 owing in the case of an accidental death under this policy on the ground that Mr. Johnson's death resulted from an altercation in which he was the aggressor and which he should have foreseen would put his life in danger.

In May 1989, plaintiff commenced this action in Missouri state court to recover the unpaid $44,000.[1] Defendant removed the action to federal court, alleging exclusive federal jurisdiction under 29 U.S.C. § 1132 because its group policy was part of the employer's "plan" regulated by the Employee Retirement Income Security Act ("ERISA"). Rather than contest Federal jurisdiction, plaintiff filed an Amended Complaint in the district court recasting her cause of action as one under ERISA. A jury trial was scheduled for late 1989 but was postponed to permit consideration of defendant's statute of limitations motion, which the district court granted. Plaintiff then appealed. After this case was argued to a panel of the court, we issued an order, sua sponte, resubmitting it to the court en banc because of a perceived need to consider whether our prior decision in *Fogerty v. Metropolitan Life Ins. Co.*, 850 F.2d 430 (8th Cir.1988), should be overruled.

I.

ERISA contains no statute of limitations for actions to recover benefits under

---

1. Under Missouri case law, plaintiff pleaded a prima facie case for accidental death benefits by alleging that the insured met his death by violence; defendant then had the burden of proving that its policy exclusion for "loss which is caused or contributed to by intentionally self-inflicted injury" applies. *See Stogsdill v. General Amer. Life Ins. Co.*, 541 S.W.2d 696, 698–699 (Mo.Ct.App.1976).

The record does not reveal why plaintiff waited nearly ten years to commence this action. Defendant has not alleged any prejudice resulting from the delay, although counsel for defendant stated at oral argument that the witnesses to the altercation had become unavailable by the time this action was commenced. The opinion in one Missouri case stated that laches may bar a claim for insurance benefits even if it is filed within the ten-year statute of limitations. *See Crawford v. Metropolitan Life Ins. Co.*, 167 S.W.2d 915, 922 (Mo.Ct.App.1943). Given the facts of this case, the district court may be required on remand to determine whether that dictum would be followed by the Missouri courts today.

a regulated plan. The district court correctly held that it must therefore look to Missouri law for the most analogous statute of limitations, but that the characterization of plaintiff's claim for statute of limitations purposes is a question of federal law. *See Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *United Auto Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966).

█ Judge Beam in dissent urges a result not considered by the parties or the district court, namely, that this action should be characterized as a suit against a trustee for breach of trust for statute of limitations purposes, and that the five year limitations period in Mo.Ann.Stat. § 456.-220 is therefore applicable. We disagree. In the first place, this action is not for breach of trust. It involves the interpretation of an insurance policy, an asset of the employer's plan that is excepted from the trust requirements of ERISA. *See* 29 U.S.C. § 1103(b); *Brown v. Blue Cross & Blue Shield of Alabama, Inc.,* 898 F.2d 1556, 1561 (11th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991). Thus, this action is not the least bit analogous to the actions under Missouri law that are governed by Mo.Ann.Stat. § 456.220. If our search is properly for the most analogous state statute, § 456.220 is not a rational choice.

█ Second, it is important to note that ERISA contains an express federal statute of limitations for suits claiming breach of an ERISA trust, 29 U.S.C. § 1113. If it is appropriate as a matter of federal law to borrow a breach-of-trust statute of limitations, we should borrow the federal statute. However, Congress expressly limited § 1113 to suits claiming breach of an ERISA trustee's fiduciary duties "under this part," which does not include beneficiary suits under § 1132(a)(1)(B).[2] It cannot be consistent with congressional intent to borrow a state breach-of-trust statute of limitations to govern suits by ERISA bene-

ficiaries, when that state statute was itself preempted by an ERISA limitations provision that is expressly not applicable to such suits.

Third, we think the dissent's quest for statute of limitations uniformity does not warrant creating judicially what Congress intentionally did not provide in the statute. The Supreme Court's decision in *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), was based upon factors unique to the federal Civil Rights Act of 1871. The Supreme Court has rejected a uniform statute of limitations for actions under § 301 of the Labor Management Relations Act, stating, "Lack of uniformity in this area is ... unlikely to frustrate in any important way the achievement of any significant goal of labor policy." *UAW v. Hoosier Cardinal Corp.,* 383 U.S. at 702, 86 S.Ct. at 1111. True, the Court subsequently borrowed a uniform *federal* limitations period for union breach of duty suits, but only after stating that "resort to state law remains the norm for borrowing of limitations periods" unless federal law "clearly provides a closer analogy [that is] significantly more appropriate." *DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 171–72, 103 S.Ct. 2281, 2294, 76 L.Ed.2d 476 (1983). We conclude, and the dissent apparently agrees, that suits to recover ERISA benefits should be governed by the norm, the most analogous state statute of limitations.

Finally, we question whether adoption of state breach-of-trust limitations law would achieve the dissent's objective of ending confusion and inconsistency. In Missouri, for example, it is unlikely that § 456.220, a rather new statute, has abrogated the traditional doctrine that, "The statute of limitations [for breach of a trustee's duty] does not begin to run until the trust is repudiated." *Senn v. Manchester Bank of St. Louis,* 583 S.W.2d 119, 134 (Mo.1979). *See* Bogert, *The Law of Trusts & Trustees* § 951 (2d ed. 1982). Although that doctrine can be avoided here by treating the

---

**2.** The reference to "this part" is to "Part 4— Fiduciary Responsibility" of Subtitle B, Subchapter I, of ERISA. Section 1132 authorizing

beneficiary suits is in the civil enforcement provisions of Part 5.

denial of plaintiff's death claim as a "final account," determining when the cause of action accrued on claims for ongoing benefits from a continuing ERISA plan might prove more troublesome under traditional trust limitations law.

■ For the above reasons, we agree with those federal courts that have held, without exception to our knowledge, that a suit for ERISA benefits under § 1132(a)(1)(B) should be characterized as a contract action for statute of limitations purposes, unless a breach of the ERISA trustee's fiduciary duties is alleged. *Compare Jenkins v. Local 705*, 713 F.2d 247, 253 (7th Cir.1983), *and Dameron v. Sinai Hosp. of Baltimore, Inc.*, 595 F.Supp. 1404, 1413 (D.Md.1984), *with Edwards v. Wilkes–Barre Pub. Co.*, 757 F.2d 52 (3d Cir.), *cert. denied*, 474 U.S. 843, 106 S.Ct. 130, 88 L.Ed.2d 107 (1985). We see no reason to reject for statute of limitations purposes the characterization that Missouri law would place on plaintiff's claim for accidental death insurance benefits. *See UAW v. Hoosier Cardinal Corp.*, 383 U.S. at 706, 86 S.Ct. at 1113. Therefore, we conclude that the district court properly framed the issue in this case as requiring us to decide which of Missouri's two contract statutes of limitations is "most analogous" to plaintiff's ERISA claim.

## II.

■ For more than a century, Missouri has had two contract statutes of limitations. Section 516.120(1) provides that, "All actions upon contracts, obligations or liabilities, express or implied, except those mentioned in section 516.110," must be brought within five years; Section 516.-110(1) provides that, "An action upon any writing, whether sealed or unsealed, for the payment of money or property" may be brought within ten years. The district court held that the five-year statute applies because plaintiff's action to recover benefits under an ERISA-regulated plan is not an action upon a written promise for the payment of money within the meaning of the ten-year statute.

There are numerous Missouri cases deciding which of these two statutes of limitations applies to a particular contract claim. Many decisions applying the five-year statute contain dictum that, in our view, is inconsistent with the holdings in many other cases applying the ten-year statute. Therefore, our task is to decide which of two parallel inconsistent lines of cases the Supreme Court of Missouri would apply to the facts of this case.

The key statutory language is that limiting the ten-year statute of limitations to "an action upon any writing ... for the payment of money." Early on, the Supreme Court of Missouri rejected a narrow interpretation of this phrase:

> Defendants claim that an instrument for the payment of money or property, such as is meant by the 10 years' statute of limitations, should acknowledge an obligation to pay which is neither conditional nor contingent.... If this position be correct, then all instruments other than notes, bonds, bills of exchange, and other written promises or obligations to pay, unconditionally, specified sums of money would be embraced by the 5 years' statute of limitations. *To this we are unable to assent.*

*State ex rel. Enterprise Milling Co. v. Brown*, 208 Mo. 613, 106 S.W. 630, 631 (1907) (emphasis added). *See also Home Ins. Co. v. Mercantile Trust Co.*, 219 Mo. App. 645, 284 S.W. 834, 836 (1926) ("this statute is to be broadly construed").

In *Enterprise Milling*, plaintiff sued upon an attachment bond; the Missouri Supreme Court held that the ten-year statute applied despite the fact that the promise to pay was conditional at the time the bond was written. The same result was reached in *Missouri, K. & T. Ry. v. American Sur. Co. of N.Y.*, 291 Mo. 92, 236 S.W. 657 (1921) (suit on indemnity bond; ten-year statute applies).

Like a bond, an insurance policy typically contains a written promise to pay money upon the occurrence of a specified future condition, such as death. The Missouri courts have consistently applied the ten-year statute of limitations to suits upon

insurance policies. *See Liebing v. Mutual Life Ins. Co. of N.Y.*, 269 Mo. 509, 191 S.W. 250 (1916) (life insurance benefits); *Edwards v. State Farm Ins. Co.*, 574 S.W.2d 505 (Mo.Ct.App.1978) (uninsured motorist benefits); *Crenshaw v. Great Central Ins. Co.*, 527 S.W.2d 1, 4 (Mo.Ct.App.1975) (uninsured motorist benefits); *Lorberg v. Jaynes*, 298 S.W. 1059 (Mo.Ct.App.1927) (suit to recover assessment for policy losses). Most pertinent to this case, the ten-year statute has twice been applied to suits for group disability insurance benefits. *Crawford v. Metropolitan Life, supra* note 1; *Adams v. Metropolitan Life Ins. Co.*, 139 S.W.2d 1098 (Mo.Ct.App.1940), *quashed on other grounds, State ex rel. Metropolitan Life Ins. Co. v. Hughes*, 347 Mo. 549, 148 S.W.2d 576 (1941). Defendant correctly points out that these decisions contain little if any reasoning as to why the ten year statute, rather than the five year statute, applies. On the other hand, they are consistent with *Enterprise Milling*, and we have found no Missouri case applying the five-year statute to a suit for insurance benefits.

Under these cases, the only relevant question is whether a plaintiff's contract claim is based upon a written promise to pay money. In this case, plaintiff's claim plainly satisfies that test, for defendant's written policy provides in part: "Upon receipt of due proof that an employee has ... sustained bodily injury ... solely through external violent and accidental means ... the Company agrees to pay ... FOR LOSS OF ... Life ... The Principal Sum [$44,-000]."

The district court ignored these insurance and bond cases and focused instead on restrictive language found in Missouri cases applying the five year-statute of limitations. First, some decisions have stated that, "[T]he essence of a promise to pay money is that it is an acknowledgment of an indebtedness, an admission of a debt due and unpaid." *Martin v. Potashnick*, 358 Mo. 833, 217 S.W.2d 379, 381 (1949). Here, of course, as the district court noted, defendant's policy does not contain an admission of indebtedness—it is a written promise to pay money *if* a specified condi-

tion, accidental death, occurs in the future. Second, some decisions applying the five-year statute have stated, "[W]here the obligation to pay is contingent upon proof of extrinsic facts it is not such a written promise as is contemplated by Section 516.-110(1)." *Silton v. Kansas City*, 446 S.W.2d 129, 132 (Mo.1969); *see also Superintendent of Insur. v. Livestock Market Ins. Agency, Inc.*, 709 S.W.2d 897, 900 (Mo. Ct.App.1986). Again, as the district court noted, plaintiff's claim does not satisfy this test, for it requires extrinsic proof that the event upon which the payment of money was conditioned—accidental death—has occurred. For these reasons, the district court held that plaintiff's claim for insurance benefits was governed by Missouri's five-year statute of limitations.

However, we do not believe that these restrictive tests accurately reflect Missouri law. In the first place, we note that *Martin, Silton*, and *Superintendent of Insurance* did not involve written promises to pay money and thus were correctly decided even under a broader construction of the ten-year statute. Second, it seems obvious to us that a rigorous application of these restrictive dicta would effectively limit the ten-year statute to promissory notes, bonds and similar instruments that contain, within the four corners of the document, an *admitted* obligation to pay money. Yet that is precisely what the Supreme Court of Missouri rejected in *Enterprise Milling*, and it is clear that in recent years the Missouri courts have continued to apply the ten-year statute to written promises to pay money on the condition that future events occur. *See, e.g., St. Louis University v. Belleville*, 752 S.W.2d 481 (Mo.Ct.App. 1988) (guaranty of payment for future services); *Mark Twain Bank v. Platzelman*, 740 S.W.2d 388 (Mo.Ct.App.1987) (continuing guaranty agreement); *Joplin CMI, Inc. v. Spike's Tool & Die, Inc.*, 719 S.W.2d 930 (Mo.Ct.App.1986) (option agreement payments after exercise); *Edwards v. State Farm Ins. Co., supra* (uninsured motorist benefits); *South Side Realty Co. v. Hamblin*, 387 S.W.2d 224 (Mo.Ct.App.1964) (exclusive sales agent commissions).

We conclude that the proper test, that is, the test that harmonizes the *holdings* in these Missouri cases, is this: if the plaintiff's contract claim is not based upon a written promise to pay money, so that any right to the payment of money must be proved by extrinsic evidence of a breach of contract, then the five-year statute applies. However, if the plaintiff's contract claim is based upon a written promise to pay money, then the ten-year statute applies "although the plaintiff may, to make out his case, be required to go beyond the terms of the writing to show performance on the part of the plaintiff and a breach on the part of the defendant." *Missouri, K. & T. Ry. v. American Sur. Co. of N.Y., supra,* 236 S.W. at 663. *See also Bangert v. Boise Cascade Corp.,* 527 F.2d 902, 906 (8th Cir.1976). Under this test, plaintiff's claim is governed by the ten-year statute: defendant's policy contains the written promise to pay money; extrinsic evidence is required only to show that defendant's written promise to pay has matured.

This result is consistent with *every* Missouri case that has involved a claim on an insurance policy or a bond. These cases are the most analogous to the case at bar factually. We cannot conclude that the Supreme Court of Missouri, if presented with this case, would overrule this long line of authority on the basis of dicta in factually distinguishable cases such as *Martin, Silton* and *Superintendent of Insurance.*

### III.

The district court's analysis was also based, in large part, on prior federal court cases which have sought to apply these confusing Missouri precedents to the ERISA arena. Initially, there were a series of district court decisions holding that the five-year Missouri statute governed suits for unpaid contributions to ERISA-regulated plans. *See Robbins v. Newman,* 481 F.Supp. 1241 (E.D.Mo.1979), followed in *Central States, S.E. & S.W. Areas Pen. Fund v. Aalco Exp. Co., Inc.,* 592 F.Supp.

664 (E.D.Mo.1984), and *Central States, S.E. & S.W. Areas Pen. Fund v. King Dodge, Inc.,* 640 F.Supp. 1495 (E.D.Mo. 1986). *Robbins* was then relied upon by the district court in *Fogerty v. Metropolitan Life Ins. Co.,* 666 F.Supp. 167 (E.D.Mo. 1987), which held that a claim for disability benefits under an ERISA-regulated plan was governed by the five-year statute.

While *Fogerty* was pending on appeal, this court reversed the district court in *Central States S.E. & S.W. Areas Pen. Fund v. King Dodge, Inc.,* 835 F.2d 1238 (8th Cir.1987). Consistent with the above analysis, this court held in *King Dodge* that the ten-year Missouri statute governed the trustee's suit for unpaid contributions because "King Dodge's promise is contained within the four corners of the writing," even though extrinsic evidence such as the number of covered employees would be needed to establish the amount owed.[3] 835 F.2d at 1240. Our decision in *King Dodge* is particularly significant here, for it would be anomalous if ERISA actions to enforce written promises to pay contributions *into* a regulated plan were governed by a more liberal statute of limitations than ERISA actions to enforce written promises to pay benefits *out of* a regulated plan.

Shortly after *King Dodge* was decided, this court affirmed the district court in *Fogerty v. Metropolitan Life Ins. Co.,* 850 F.2d 430 (8th Cir.1988). Without stating whether the benefit plan in question contained a written promise for the payment of money, and without noting either *King Dodge* or the Missouri cases holding that the ten-year statute governs suits for disability insurance benefits, the court in *Fogerty* held that the five-year statute governed because "an action upon a contract in writing for the payment of money is not similar to an action for the recovery of employee benefits under ERISA." 850 F.2d at 432.

Defendant argues, and the district court concluded, that this case is controlled by

**3.** Defendant argues that *King Dodge* is distinguishable because the defendant did not deny its liability for future contributions and thus only the amount of the debt, not the fact of the debt,

was uncertain. Although it is possible to parse some of the Missouri cases in this fashion, we do not find the distinction consistent with the *Enterprise Milling* line of decisions.

*Fogerty.* We cannot agree. Here, plaintiff has pled, and the policy document clearly confirms, that her contract claim is based upon defendant's written promise to pay money. The Missouri cases relied upon in *Fogerty* are distinguishable on this ground, and, to the extent *Fogerty* relies upon dictum in those cases, we do not believe it reflects Missouri law as to claims for insurance benefits. Accordingly, *Fogerty* is overruled.

This court has considerable reservations about the wisdom of a ten-year statute of limitations for a claim such as this that appears to turn upon a tragic event that occurred long ago. However, subject to whatever laches principles may apply under state law, that is a legislative question. Either Congress, by amending ERISA, or the Missouri Legislature is free to modify the statute of limitations. Until such legislative action, we are required to hold, consistent with Missouri law, that plaintiff's claim to enforce defendant's written promise for the payment of money is governed by the ten-year statute of limitations in Mo.Ann.Stat. § 516.110(1).

The judgment of the district court is reversed and the cause remanded for further proceedings consistent with this opinion.

McMILLIAN, Circuit Judge, dissenting, with whom JOHN R. GIBSON, Circuit Judge, joins.

It may well be that insurance policies are "promises for the payment of money" within the meaning of Mo.Rev.Stat. § 516.-110(1). However, I remain unpersuaded. For the reasons discussed below, I would hold that the insurance policy in question does not contain a promise for the payment of money and, therefore, this action is barred by the 5–year statute of limitations applicable to actions upon written contracts, Mo.Rev.Stat. § 516.120(1). Accordingly, I respectfully dissent.

The Missouri case law is subject to differing interpretations. Unlike the majority opinion, however, I read *State ex rel. Enterprise Milling Co. v. Brown,* 208 Mo. 613, 106 S.W. 630 (1907) (*Enterprise Mill-*

*ing* ), and *Missouri, Kansas & Texas Ry. v. American Surety Bond Co.,* 291 Mo. 92, 236 S.W. 657 (1921) (banc) (*American Surety* ), as the "aberrant" line of cases and would instead adhere to that line of cases represented by *Parker–Washington Co. v. Dennison,* 267 Mo. 199, 183 S.W. 1041 (1916) (*Parker–Washington Co.*), and *Martin v. Potashnick,* 358 Mo. 833, 217 S.W.2d 379 (1949). *See Fogerty v. Metropolitan Life Insurance Co.,* 850 F.2d 430, 432 (8th Cir.1988) (*Fogerty* ) (now overruled by this case); *Superintendent of Insurance v. Livestock Market Insurance Agency, Inc.,* 709 S.W.2d 897, 900–02 (Mo.Ct. App.1986) (*Livestock Market* ).

"It is the evolved principle of [Missouri] decisions that, in order for the ten-year limitations period of § 516.110 to appertain, the writing must be not only for the payment of money, but also must contain a *'promise to pay money.'* " *Livestock Market,* 709 S.W.2d at 900, *citing Martin v. Potashnick,* 217 S.W.2d at 381 (emphasis added). "[T]o constitute *a promise for the payment of money,* 'the money sued for' must be that money promised by the language of the writing without resort to extrinsic proofs" and "the cause of action must be based upon an absolute and fixed liability—a written acknowledgment of money due and unpaid." *Livestock Market,* 709 S.W.2d at 901–02 (emphasis in original), *citing Parker–Washington Co.,* 183 S.W. at 1042. Thus, "the essence of a promise to pay money is that it is an acknowledgement of an indebtedness, *an admission of a debt due and unpaid."* *Martin v. Potashnick,* 217 S.W.2d at 381 (emphasis added). In the present case, the insurance policy does not contain an admission of indebtedness; there is no absolute and fixed liability on the part of the insurer to pay accidental death benefits. In addition, proof of plaintiff's claim would require extrinsic evidence that accidental death had occurred. In my view, these factors make it impossible to construe the insurance policy in question as a promise for the payment of money.

I would distinguish *Enterprise Milling* and *American Surety* as cases involving

writings for the payment of money, an attachment bond and an indemnity bond, respectively, but not promises for the payment of money. In each case the bondholder had to go beyond the writing itself to prove both the existence of the underlying obligation or the occurrence of the condition or contingency, as well as the amount of the obligation. In neither case did the writing in itself promise the payment of money, that is, acknowledge indebtedness or liability absolute or fixed. *Lorberg v. Jaynes*, 298 S.W. 1059, 1061 (Mo.Ct.App. 1927) (*Lorberg*), and *Home Insurance Co. v. Mercantile Trust Co.*, 219 Mo.App. 645, 284 S.W. 834 (1926) (*Home Insurance*), arguably support my analysis because in each case the court held a particular writing was a promise for the payment of money and then applied the 10–year statute of limitations. *Lorberg* involved a contract promising to pay a pro rata share of losses, 298 S.W. at 1061, and *Home Insurance* involved a written guarantee of endorsements on a draft, 284 S.W. at 836.

With respect to the cases applying the 10–year statute of limitations to insurance policies, each case applies the 10–year statute of limitations, without analysis, only after deciding an unrelated question of statutory interpretation. In *Liebing v. Mutual Life Insurance Co.*, 269 Mo. 509, 191 S.W. 250 (1916), the issue was whether the action was one based on a "writing ... for the payment of money" or on a liability "created by a statute other than a penalty or forfeiture." 191 S.W. at 252. The plaintiff argued that the 10–year statute of limitations applied because the action involved an insurance policy as extended by certain nonforfeiture statutes; the defendant argued that the 5–year statute of limitations applied because the action involved an obligation created by the nonforfeiture statutes. The court presumed that the policy, aside from the nonforfeiture statutes, was a promise for the payment of money and held that because the nonforfeiture statutes were part of the policy, the action was on the policy, not an obligation created by statute, and the 10–year statute of limitations applied. *Id.* at 252–53.

*Adams v. Metropolitan Life Insurance Co.*, 139 S.W.2d 1098 (Mo.Ct.App.1940) (*Adams*), quashed on other grounds sub nom. *State ex rel. Metropolitan Life Insurance Co. v. Hughes*, 347 Mo. 549, 148 S.W.2d 576 (1941) (banc), and *Crawford v. Metropolitan Life Insurance Co.*, 167 S.W.2d 915 (Mo.Ct.App.1943) (*Crawford*), did not involve choosing between the 5–year and 10–year statutes of limitations. In each case the analysis assumed the 10–year statute of limitations applied and focused upon when the claimant's cause of action for insurance benefits accrued.

The 10–year statute of limitations was applied with little analysis in *Crenshaw v. Great Central Insurance Co.*, 527 S.W.2d 1 (Mo.Ct.App.1975) (*Crenshaw*), and *Edwards v. State Farm Insurance Co.*, 574 S.W.2d 505 (Mo.Ct.App.1978) (*Edwards*). In *Edwards* the issue was whether a suit for personal injuries against the insurer under a policy containing uninsured motorist coverage was a contract action or a tort action. The court held the action was a contract action and applied the 10–year statute of limitations. 574 S.W.2d at 506 (accident occurred in 1971, lawsuit filed in 1977), *citing Crenshaw*, 527 S.W.2d 1. In *Crenshaw* the issue was whether the 2–year statute of limitations for wrongful death actions barred an insured's action against the insurer for uninsured motorist coverage. The fatal accident occurred in 1969; the lawsuit was not filed until 1972. The court held that the lawsuit was a contract action and applied the 10–year statute of limitations, without any discussion or explanation and cited only uninsured motorist coverage cases. 527 S.W.2d at 4.

Finally, I do not think *Central States, Southeast & Southwest Areas Pension Fund v. King Dodge, Inc.*, 835 F.2d 1238 (8th Cir.1987) (*King Dodge*), is inconsistent with either *Fogerty* or the *Parker–Washington Co.* line of Missouri cases. In *King Dodge* the trust agreement contained a promise to pay money, an indebtedness which the employer acknowledged. The only disagreement involved the amount to be paid, and the fact that extrinsic evidence is required to prove the amount to be paid will not bar the application of the 10–year

statute of limitations. 835 F.2d at 1240, *citing Livestock Market*, 709 S.W.2d at 900. In the present case, the insurance policy does not contain an admission of indebtedness, and the insurer has not admitted an absolute and fixed liability to pay accidental death benefits.

I would hold that the 10–year statute of limitations does not apply and would accordingly affirm the order of the district court.

BEAM, Circuit Judge, dissenting, with whom FAGG, Circuit Judge, joins.

Because I disagree that this action for ERISA benefits should be governed by either of Missouri's contract statutes of limitation, I respectfully dissent. I would hold instead that the Missouri statute of limitation most analogous to an action brought by a plan participant or beneficiary seeking ERISA benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) (1988) is the Missouri statute limiting suits against trustees. *See* Mo.Ann.Stat. § 456.220 (Vernon Supp. 1991).

The Supreme Court has already considered the problem with which we now struggle in a different context. Prior to *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), the lower courts, in borrowing state statutes of limitation for actions brought under 42 U.S.C. § 1983 (1988), focused on the nature of the particular claim at issue, a practice which "bred confusion and inconsistency in the lower courts and generated time-consuming litigation." *Owens v. Okure*, 488 U.S. 235, 240, 109 S.Ct. 573, 576, 102 L.Ed.2d 594 (1988). In *Wilson*, the Court sought to remedy the resulting "conflict, confusion, and uncertainty concerning the appropriate statute of limitations." *Wilson*, 471 U.S. at 266, 105 S.Ct. at 1941. For purposes of determining the most analogous state statute of limitation, the Court rejected an approach which would "depend upon the particular facts or the precise legal theory of each claim," and under which "different statutes of limitations would be applied to the various § 1983 claims arising in the same State, and multiple periods of limita-

tions would often apply to the same case." *Id.* at 274, 105 S.Ct. at 1946. Accordingly, the Court held that "[section] 1983 claims are best characterized as personal injury actions." *Id.* at 280, 105 S.Ct. at 1949. Due to the array of state statutes of limitation governing particular personal-injury actions, however, the Court was forced to revisit the problem in *Owens*. The Court refined the approach adopted in *Wilson* by holding that "where a State has one or more statutes of limitations for certain enumerated intentional torts, and a residual statute for all other personal injury actions," the residual or general personal injury statute applies. *Owens*, 488 U.S. at 236, 109 S.Ct. at 574.

I think that choosing the most analogous state statute of limitation for an ERISA cause of action seeking benefits by focusing on the particular benefit at issue can only produce, as this case shows, the same sort of "confusion and inconsistency" and "time-consuming litigation" that the Supreme Court sought to avoid in section 1983 cases. That is, not all conceivable actions brought pursuant to 29 U.S.C. § 1132(a)(1)(B) by a plan participant seeking benefits will involve claims for insurance benefits or even be claims based on a written promise to pay money or property within the meaning of Mo.Rev.Stat. § 516.-110. Indeed, ERISA defines a plan participant as anyone "who is or may become eligible to receive a benefit *of any type* from an employee benefit plan." 29 U.S.C.A. § 1002(7) (West Supp.1991) (emphasis added). Under the majority's approach, to determine which of Missouri's two contract statutes of limitation applies we will have to consider, again and again, the particular nature of the benefit being sought rather than the general nature of the federal action for recovering ERISA benefits, whatever their nature.

For purposes of borrowing a state statute of limitation for a federal claim, the characterization of the federal cause of action " 'is ultimately a question of federal law.' " *Wilson*, 471 U.S. at 270, 105 S.Ct. at 1943 (quoting *UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 706, 86 S.Ct. 1107, 1113, 16 L.Ed.2d 192 (1966)). This general

principle highlights the essence of our inquiry—we should consider a claim for benefits brought under 29 U.S.C. § 1132(a)(1)(B) not as a state action challenging an employer's denial of benefits, and, accordingly, one governed by principles of contract law, but rather as a federal action governed by the principles of ERISA. *Cf. Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 112, 109 S.Ct. 948, 955, 103 L.Ed.2d 80 (1989). In *Firestone*, the Court held that, because "ERISA abounds with the language and terminology of trust law," the guiding principles for determining the appropriate standard of review for actions seeking ERISA benefits are those provided by trust law. *Id.* at 110, 111, 109 S.Ct. at 954, 954. I see no reason why our characterization of the same federal statute considered in *Firestone* should be fundamentally different merely because we seek to determine a statute of limitation rather than a standard of review.

This action was removed from state court because it was, apparently without dispute among the parties, an ERISA claim by a beneficiary of an employee benefit plan. ERISA, 29 U.S.C. § 1102(a)(1), requires a plan to be in writing, which writing must provide for one or more fiduciaries to control and manage the plan. ERISA, 29 U.S.C. § 1103(a), further provides that all plan assets must be held in trust by one or more trustees. An exception provided in section 1103(a) stipulates that an asset consisting of insurance benefits, as here, may be administered directly by an insurance carrier qualified to do business in a state.

The trustee requirement under section 1103(a) is designed, at least in part, to protect the plan assets from mismanagement and dissipation by the employer. Presumably, state regulation of a qualified insurance carrier, including requirements for prudent investment and adequate reserves, was thought by Congress to be protection akin to that provided by appointment of a trustee for other assets.

Under the statutory scheme, an action for benefits, other than insurance benefits, would be brought against the section 1103(a) trustee. Such action would be one for alleged breach of the trust agreement, whether or not there were allegations of breach of a fiduciary duty by the trustee. Many, if not most, of these breach of trust claims will be, as here, in the nature of declaratory relief and not necessarily claims of violation of duties of fidelity, trust and honor owed by the trustee, as a fiduciary, to the beneficiary. Putting aside the question of what statute of limitation applies to breach of fiduciary duty claims, actions seeking benefits allegedly due, for whatever other reason, will normally be brought against the section 1103(a) trustee. Under the majority's approach, determining what statute of limitation applies to these claims will depend on the benefit sought. That is, the majority does not answer the question of what statute of limitation applies to an action against a section 1103(a) trustee seeking some benefit other than payment of money or property.

In my view, it is anomalous to carve out a separate category, for statute of limitations purposes, for an ERISA claim for the payment of money or property. When plan money is used to purchase insurance from a qualified carrier, the premium money is paid to the carrier to hold, invest and pay out under the terms of the policy, which policy is, in turn, an asset of the employee benefit plan. For ERISA plan purposes, the carrier is a fiduciary, *Eversole v. Metropolitan Life Ins. Co.*, 500 F.Supp. 1162, 1165 (C.D.Cal.1980), 29 C.F.R. § 2560.503-1(g)(2) (1989), and, at least, a quasi trustee of plan assets. Such separate treatment based on the nature of the benefit is contrary to the policy announced in *Garcia* with regard to section 1983 actions and in *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) with regard to unfair labor practices under the National Labor Relations Act, 29 U.S.C. § 160(b). (The Court stressed desirability of a uniform national limitation period in breach of duty cases.) This policy is equally applicable in the ERISA framework where a wide variety of benefits including payments of money or property, education and training, child

**1270**

care services, medical services and insurance proceeds, to name a few, may all be benefits provided by the same plan. Clearly Mo.Rev.Stat. § 516.110 would not be applicable to claims involving a number of the benefits available in many employee plans.

Thus, I would hold that the most analogous state statute of limitation, if we choose to apply state law,[1] is not one governing claims for breach of contract, but one governing suits against trustees. In Missouri, section 456.220 provides that "any cause of action against a trustee for breach of trust shall be barred as to any beneficiary ... unless a proceeding to assert the cause of action is commenced within five years after receipt of the final account or statement by him." Mo.Ann.Stat. § 456.220. In this case, Johnson received the equivalent of a final account or statement when State Mutual Life Assurance Company paid death benefits but refused to pay the $44,000 owing in the case of an accidental death. Because Johnson commenced her claim more than five years after she was denied benefits, I would find her action untimely, and, therefore, affirm the district court's judgment dismissing her complaint.

---

1. The Third Circuit has applied the federal limitations found in 29 U.S.C. § 1113 to claims for benefits by a plan beneficiary. *Edwards v. Wilkes–Barre Publishing Co. Pension Trust*, 757 F.2d 52, 54 (3d Cir.), *cert. denied*, 474 U.S. 843, 106 S.Ct. 130, 88 L.Ed.2d 107 (1985); *Adams v. Gould, Inc.*, 739 F.2d 858, 867 (3d Cir.1984), *cert. denied*, 469 U.S. 1122, 105 S.Ct. 806, 83 L.Ed.2d 799 (1985). At least one federal trial court also applies the federal three-year statute found in section 1113. *Sparks v. Ryerson & Haynes, Inc.*, 638 F.Supp. 56, 61 (E.D.Mich.1986).