OPINION OF THE COURT
SCHWARZER, Senior District Judge.
In this appeal we are again called on to interpret the “actual knowledge” requirement in ERISA’s statute of limitations in an action for breach of fiduciary duty. See 29 U.S.C. § 1113(a)(2)(A); see also Kurz v. Philadelphia Elec. Co., 96 F.3d 1544 (3d Cir.1996); International Union of Electronic Workers v. Murata Erie North America, Inc., 980 F.2d 889 (3d Cir.1992); Gluck v. Unisys Corp., 960 F.2d 1168 (3d Cir.1992).
Phillip Connell, who worked as an iron-worker in covered employment[1] nearly continuously between 1962 and 1993, and Charles Nelson, who has worked as an iron-worker in covered employment periodically since 1951, brought this action against the Pension Fund of the Ironworkers District Council of Northern New Jersey (the “Fund”). The Fund manages the pension plan established under a collective bargaining agreement between employers and the Northern District Council of Ironworkers (whose locals are affiliated with the International Association of Bridge, Structural & Ornamental Ironworkers, AFL-CIO) (the “Union”). Connell and Nelson claim that the Fund acted arbitrarily and capriciously in violation of 29 U.S.C. §§ 186(c)(5) and 1104 when it enforced its break-in-service rule, which provides for cancellation of accrued pension credits after a specified absence from covered employment, thereby canceling their previously earned credits.[2] The Fund *156 contends, among other things, that because Connell and Nelson failed to file their action within three years of receiving actual notice that certain of their pension credits were canceled, the action is barred by the ERISA statute of limitations.
Connell worked as an ironworker from 1962 to 1968 and again from 1971 to 1993. He testified at trial that he first knew that he had lost certain pension credits as a result of his break in service when he received a credit statement from the District Council in 1981. Connell then consulted his pension plan book and found the break-in-service rule. He went to see his business agent to com plain and then called the Fund representative, who “quoted the broken-service [sic] rule, that if you’re out three years and you aren’t vested ... you lose the credit for those years you had in.” Appellee’s Br. at 13 (quoting Connell’s testimony at trial).
Nelson worked off and on as an ironworker between 1951 and 1973. He worked continuously outside the trade between 1973 and 1984. In 1984, Nelson resumed ironwork and remains in covered employment today. He testified that he first found out he had lost his pre-1974 pension credits about 1981 or 1982, when he received a document from the District Council stating that his credits fer prior years of service had been canceled because he had two breaks in service. He contacted a union representative after receiving the notice of cancellation. As he said at trial, “That’s when I thought I better find out about this whole thing.” Appellee’s Br. at 13 (quoting Nelson’s testimony at trial).
After a bench trial, the district court ruled in favor of the Fund, finding that the claims were not time-barred but that application of the break-in-service rule to Connell and Nelson was not arbitrary and capricious because they voluntarily left covered employment when jobs were available with notice that such departures would cause their pension credits to be canceled. Connell and Nelson appeal the district court’s decision.[3] We have jurisdiction of the appeal under 28 U.S.C. § 1291 and AFFIRM, albeit on different grounds.
DISCUSSION
The claims of Connell and Nelson against the Fund for breach of fiduciary duty arise under 29 U.S.C. §§ 186(c)(5) and 1104(a)(1)(A)©.[4] ERISA’s statute of limitations, 29 U.S.C. § 1113(a)(2)(A), applies to claims arising under both of these statutory provisions.[5] See Struble v. N.J. Brewery *157 Emp. Welfare Trust Fund, 732 F.2d 325, 331-32 (3d Cir.1984). That section provides in relevant part:
No action may be commenced ... with respect to a fiduciary’s breach of any ... obligation ... after the earlier of—
(1) six years after (A) the date of the last action which constituted a part of the breach or violation ... or ...
(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation____
29 U.S.C. § 1113(a). We have held that “Section 1113 sets a high standard for barring claims against fiduciaries prior to the expiration of the section’s six-year limitations period.” Gluck v. Unisys Corp., 960 F.2d 1168, 1176 (3d Cir.1992).[6] “ ‘[A]ctual knowledge of a breach or violation’ requires that a plaintiff have actual knowledge of all material facts necessary to understand that some claim exists, which facts could include ... knowledge of a transaction’s harmful consequences____” Id. at 1177 (citations omitted).
A breach may occur without a plaintiffs having suffered actual harm. Ziegler v. Connecticut General Life Ins. Co., 916 F.2d 548, 551 (9th Cir.1990). Plaintiffs’ complaint that the Fund’s cancellation of their pension credits under the break-in-service rule is arbitrary and capricious sufficiently alleges a claim for breach of fiduciary duties. See Knauss v. Gorman, 583 F.2d 82 (3d Cir.1978). If a breach was committed, it therefore must have occurred upon cancellation of the credits; by the terms of the plan, accrued credits were canceled immediately after a break-inservice exceeded the period specified by the plan (i.e., in 1971 for Connell and in 1964 and 1978 for Nelson).
In Gluck we held that mere knowledge of amendments of the employer’s benefit plan, the effect of which was to cause accrued benefits not to fully vest upon partial termination, could not be deemed actual knowledge of a violation of the technical provisions of ERISA. We noted that:
the company literature distributed to employees ... described [the amendments] as improving participants’ benefit packages---- For a participant to have discerned a cause of action for partial termination at that time ... may have required a review of the plan document and of the plan’s balance sheet ... a level of research and scrutiny inconsistent with section 1113’s actual knowledge standard.
Gluck, 960 F.2d at 1179. We remanded for a determination of “when each employee had actual knowledge of all material facts relevant to a partial termination claim,” having emphasized, however, “that our holding does not mean that the statute of limitations can never begin to run until a plaintiff first consults with a lawyer.” Id. at 1177.
Following Gluck, we held in International Union of Electronic Workers v. Murata Erie North America, Inc., 980 F.2d 889, 900 (3d Cir.1992), that beneficiaries who had notice of a plan amendment but were not informed that the amendment provided for reversion of excess funds to the employer lacked actual knowledge of a breach. As we then said, Murata “failed to make the showing of actual knowledge necessary to meet the ‘stringent requirement’ imposed by ... 29 U.S.C. 1113[ (a) ](2).” Id. at 901 (citing Gluck, 960 F.2d at 1176).
Recently, we held that where a company decides to make a material change to its pension plan but misrepresents its intent to make such a modification, the statute of limitations will begin to run once an employee knows of the change in benefits and of his own ineligibility. See Kurz v. Philadelphia *158 Elec. Co., 96 F.3d 1544, 1551 (3d Cir.1996). In Kurz, we found that plaintiffs’ knowledge of the change in plan was sufficient to begin the running of § 1113(a)(2) because:
This was not a technical violation of ERISA, nor a cleverly concealed plan amendment. PE Co openly announced that certain employees would receive better benefits, and others would not.
Id. Similarly, the plaintiffs in this case were aware of the Fund’s break-in-service rule and were aware that it had already been applied to them.
It is undisputed that Connell and Nelson knew as early as 1981 or 1982 that the Fund had canceled their pension credits by applying the break-in-service rule and that the Fund’s actions would diminish their future benefits. Like the plaintiffs in Kurz, their actual knowledge of both the alleged breach and the consequential injury they would thereby suffer gave them “knowledge that a fiduciary duty [may have] been breached or ERISA provision violated.” Gluck, 960 F.2d at 1178. Indeed, both Connell and Nelson felt sufficiently aggrieved by the Fund’s actions to question their union representatives. Thus by 1981 or 1982, Connell and Nelson had “actual knowledge of all of the [material] elements of the violation,” Gluck, 960 F.2d at 1176, including knowledge of the harmful consequences flowing from the cancellation of the credits. See International Union, 980 F.2d at 901; Gluck, 960 F.2d at 1177, 1179. There was nothing left for them to discover and nothing more for them to do but to file suit or to seek legal counsel. As we stated in Kurz, “the ‘harmful consequences’ ... were obvious.” Kurz, 96 F.3d at 1551 (citation omitted).[7] Their action, having been filed more than three years after 1982, is therefore time-barred.
The judgment is AFFIRMED.

. According to the Fund’s pension plan booklet, " ‘Covered Employment’ consists of the jobs for which contributions are made to the pension fund [by the employer].”

. Connell and Nelson also claimed that the Union’s discriminatory hiring practices, see Iron-workers, Local 373, 232 NLRB 504 (1977), enf'd sub nom., NLRB v. International Ass'n of Bridge, Structural & Ornamental Ironworkers, Local 45, 586 F.2d 835 (3d Cir.1978); Moore v. Local 483, International Ass’n of Bridge, Structural & Ornamental Ironworkers, 66 N.J. 527, 334 A.2d 1 (1975), diminished their capacity to earn a decent living as ironworkers and that their breaks in service were therefore involuntary and subject to an equitable exception to the break-in-service *156 rule. See, e.g., Knauss v. Gorman, 583 F.2d 82 (3d Cir.1978) (holding that enforcement of a break-in-service clause was arbitrary and capricious where employment hiatus was caused by involuntary unemployment and inability to find covered work). In view of our disposition of this appeal, we do not reach this claim.

. The dissent suggests that we have disregarded the factual findings underlying the district court’s disposition of the Fund’s statute of limitations defense. We do not question the district court’s findings, but we nevertheless "exercise[ ] a plenary standard of review when applying legal precepts to undisputed facts.” Easley v. Snider, 36 F.3d 297, 300 (3d Cir.1994). We therefore review de novo the district court's decision whether to apply 29 U.S.C. § 1113(a)(2) on the facts before it.

. Nelson also purports to state a claim under 29 U.S.C. § 1132(a)(1)(B) (permitting an action to be brought by a beneficiary "to clarify his rights to future benefits under the terms of the plan”). No such claim exists independent of his claim for breach of fiduciary duty—i.e., Nelson’s only claim for "future benefits” arises out of his contention that the Fund, by canceling credits under its break-in-service rule, breached its fiduciary duty in violation of §§ 186(c)(5) and 1104. Under the facts of this case, § 1132(a)(1)(B) does not create a right to relief distinct from that arising under §§ 186(c)(5) and 1104. And even if Nelson were able to state a claim under § 1132(a)(1)(B), the claim would be time-barred. New Jersey’s statute of limitations for contract actions, which would apply, see Kennedy v. Electricians Pension Plan, 954 F.2d 1116, 1120 (5th Cir.1992) (quoting Johnson v. State Mut. Life Assur. Co. of America, 942 F.2d 1260, 1262 (8th Cir.1991)); see also National Iranian Oil Co. v. Mapco Int’l, Inc., 983 F.2d 485, 492 (citing Johnson with approval as an example where state statute of limitations was applied to federal statute that lacked a time-bar), is six years. N.J. Slat. Ann. § 2A:14—1. As Nelson had notice of his forfeited credits in 1981 or 1982, the statute began to run on that date, and whatever cause of action he might have had under § 1132(a)(1)(B) was barred after 1987 or 1988.

. Connell and Nelson claim that we may not consider the Fund’s statute of limitations argument because the Fund failed to cross-appeal *157 from the district court's adverse ruling on that issue. Their contention is without merit. Because the Fund "seek[s] to sustain fh[e] judgment [below] ... there was no need for a cross appeal.” Reserve Ins. Co. v. Brokerage Surplus Corp., 570 F.2d 487, 491 (3d Cir.1978) (citing 9 Moore’s Practice ¶ 204.11(3) (2d ed.)); see United States v. American Ry. Exp. Co., 265 U.S. 425, 435, 44 S.Ct. 560, 564, 68 L.Ed. 1087 (1924) (stating that "it is likewise settled that the appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court").

. The Fund does not contend that the action is barred by the six-year statute. It is clear that if the forfeiture of pension credits under the break-in-service rule resulted in a breach of fiduciary duties, the last action constituting a part of that breach did not occur until payment of reduced pension benefits to the beneficiaries.

. The dissent’s hypothetical concerning a pair of ironworkers discriminated against on the basis of their nonunion status has no bearing here. Unlike the dissent's hypothetical plaintiffs, who were unaware that they had lost pension credits because they were not union members, Connell and Nelson clearly knew in 1981 or 1982 of the break-in-service rule, of the union's discriminatory practices, of their own employment histories, and of the effect of the rule’s application to them. The hypothetical, sound as it may be on its own terms, is therefore not relevant to the facts of this case.