MAGILL, Circuit Judge.
The Administrative Committee of the Wal-Mart Stores, Inc., Associates’ Health *781 and Welfare Plan (the “Committee”) appeals the district court’s[1] grant of summary judgment for defendant William Diggs.[2] The Committee sought to enforce the reimbursement provision of the Wal-Mart Employee Benefit Plan (the “Plan”) pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461 (2000). The district court found that the Committee’s claims were time barred, and, in the alternative, meritless. We agree that the Committee’s claims are barred and affirm.
I.
The facts are undisputed. The Plan is an employer sponsored, self-funded health and welfare employee benefit plan, which is governed by ERISA and contains a reimbursement provision.[3] The Plan is administered by the Committee in Rogers, Arkansas. The Committee appoints individuals to assist in the day-to-day administration of the Plan (collectively “Plan Administrator”).
Patrick Hollander was a Wal-Mart employee in Myrtle Beach, South Carolina; he was covered by the Plan. On April 25, 1996, Hollander was struck by a car driven by J.W. Todd and then by a second car driven by Jamie Lee Hucks. Hollander died on April 29, 1996. Hollander’s hospitalization and medical treatment resulted in charges of $48,837.99, which the Plan paid.
*782 Hollander had one daughter, Kristen Hollander. Kristen now resides in South Carolina with Hollander’s mother, Evelyn Soles, the duly appointed personal representative for Hollander’s estate (the “Personal Representative”). William Diggs is an attorney representing the estate of Hollander, including Kristen’s interests.
The Personal Representative filed a tort action in South Carolina state court (“tort action”) alleging (1) a dram shop violation against numerous defendants on behalf of Hollander under the South Carolina survival statute[4]; (2) a dram shop violation against numerous defendants on behalf of Hollander’s beneficiary, Kristen, pursuant to the South Carolina wrongful death statute [5]; and (3) a claim for negligence against Todd and Hucks under both the survival and wrongful death statutes of South Carolina.[6] Damages were alleged at $1,000,000 on the survival claims and $10,000,000 on the wrongful death claims.
On January 15, 1997, Todd’s automobile insurer offered to pay $100,000, the limit of Todd’s liability policy. The Personal Representative accepted this amount in complete settlement and compromise of both the wrongful death and survival claims against Todd and his family (“Settlement I”). The probate court approved Settlement I and ordered the proceeds apportioned as follows: $90,000 to the wrongful death action, $10,000 to any claim for survival, and $25,000 in attorney’s fees to be paid from the wrongful death proceeds. On the same day, Todd’s attorney faxed a letter to the Plan Administrator explaining Settlement I.
The following day Diggs faxed a letter to the Plan Administrator informing him of the settlement with Todd as well as the nature of the South Carolina wrongful death and survival statutes. The letter stated, in part,
We would ask that you agree that Wal-Mart has no subrogation claim against any monies which are allocated for receipt by Mr. Hollander’s statutory beneficiaries as a result of their wrongful death claim, and that Wal-Mart’s rightful interest in this case lies against the assets of the estate of Patrick Hollander *783 which include the $10,000.00 fund allocated as a result of the survival action which we have maintained on his behalf.
J.A. at 57-58.
On January 23, 1997, in a letter addressed to Todd’s attorney and carbon copied to Diggs, the Plan agreed to accept the $10,000 from Settlement I, but stated that “[t]he Plan will pursue the remainder of its subrogation interest from future settlements received by the Hollander Estate.” J.A. at 44.
On March 25, 1997, Diggs sent the Plan Administrator a check from his trust account in the amount of $10,000. The check was accepted and the funds applied toward reimbursement, leaving an outstanding balance of $38,837.99.
Thereafter, Diggs continued his efforts to obtain settlements or judgments against the other defendants to the tort action. The Plan Administrator requested and received periodic updates from Diggs as to the status of the proceedings to collect from third parties.
On March 2, 2000, Diggs wrote the Plan Administrator and explained that because Hollander “never regained consciousness ... we were not able to develop any evidence to warrant payment to him in a survival action for pain and suffering. The settlement the estate has agreed to is structured and will pay Mr. Hollander’s daughter payments throughout her life” (“Settlement II”). J.A. at 66. Diggs offered to pay the Plan $10,000 from Settlement II toward the outstanding medical expenses.
On April 6, 2000, the Plan Administrator responded and refused the $10,000:
Please be advised the additional $10,000.00 making a total of $20,000.00 settlement you offered in your letter is not acceptable. The Plan requires 100% reimbursement from any settlement.... Referring to the previous telephone conversations and letters [between the Plan Administrator and Diggs,] I see that the Plan agreed not to pursue 100% reimbursement from [Settlement I]. It was agreed that reimbursement would be made once settlement was obtained from the other parties involved in this tragic accident.
Please forward a check for the full amount due the Plan as previously agreed. Please be advised the Plan requires reimbursement from any settlement, including whether or not the settlement was designated as a wrongful death settlement or otherwise.
J.A. at 67.
On April 8, 2000, Diggs replied, informing the Plan Administrator that Settlement II had not yet been approved by the court and stating:
[i]n order to obtain court approval of the settlement, and thus the payment of $38,837.99 to your plan, please provide me with the language in your plan which requires 100% reimbursement to you under the circumstances of the instant case. I will need this language in order to present it to the court for approval. Please understand that we acknowledge that the law of this Circuit supports the position you have taken in your letter of April 6, 2000. See United McGill Corp. v. Stinnett, 154 F.3d 168 (4th Cir.1998).
J.A. at 69.
On April 11, 2000, the Plan Administrator faxed a written response and attached a copy of the relevant language from the Plan in effect in 1996 and the version that became effective on January 1, 2000.[7] The letter stated that the Plan specifically requires “100% reimbursement from any set *784 tlement and no reduction for attorneys’ fees.” J.A. at 70.
The Plan Administrator received no response from Diggs. On October 11, 2000, the Plan Administrator sent Diggs a request for a status update:
It has just come to my attention that I have not heard from you since your letter dated April 8, 2000, at which túne you requested a copy of our Plan language in order to obtain court approval of the settlement and payment of the Plan’s $38,837.99 reimbursement interest. Please advise what is the status of settlement and/or settlement disbursement.
J.A. at 80.
On October 19, 2000, Diggs answered the inquiry, indicating that as a result of Plan Administrator assertions and reliance on United McGill Corp., which did not involve a wrongful death claim, Diggs was led to believe that case law required 100% reimbursement to the Plan. However, Diggs stated,
[a] more complete review of the case law from the United States Court of Appeals for the Fourth Circuit ... shows that Wal-Mart has misrepresented the legality and breadth of its subro-gation interest, at least in its scope, as applicable to this case, which is a wrongful death case.
J.A. at 81. Diggs also requested an explanation as to why Wal-Mart was entitled to the previous $10,000 received from Settlement I: “Wal-Mart was never entitled to claim an interest in wrongful death proceeds generated in favor of Mr. Hollander’s daughter, including the $10,000.00 previously paid to you.” J.A. at 82.
Diggs and the Plan Administrator exchanged a few more letters, requests for information, and requests for status updates. On November 3, 2000, Diggs indicated by letter that “[w]e have entered into a structured settlement for Mr. Hollander’s daughter. A sufficient amount of funds were held in trust to satisfy Wal-Mart’s subrogation claim.” J.A. at 84. The Plan Administrator’s response letter cited McInnis v. Provident Life & Accident Ins. Co., 21 F.3d 586 (4th Cir.1994), which held that North Carolina’s wrongful death statute was preempted by ERISA, and indicated “I trust you will be forwarding reimbursement to my attention in the very near future.” J.A. at 97.
On May 17, 2000, the state court entered an order approving Settlement II. The court authorized the Personal Representative to accept $130,000 “now and future periodic payments in the name of Kristen Hollander with a ... guaranteed value” of $769,584.20, with “expected benefits” totaling $1,153,757.00 “as settlement in full of any and all liability for any claims, liens, causes of action, settlements, judgments or the like that said Personal Representative of the Estate of Patrick Hollander has or might have” against the defendants to the tort action. J.A. at 110-11.
On November 21, 2000, Diggs notified the Plan Administrator that he felt misled as to the law applicable to the Committee’s claim for reimbursement. Diggs claimed that “in Mr. Hollander’s case, there was no evidence of any conscious pain and suffering and therefore, no evidence to support a survival claim.” J.A. at 99. Furthermore, Diggs stated,
[i]n Mr. Hollander’s case, the damage claim at issue was the wrongful death settlement proceeds belonging to Mr. Hollander’s daughter, not Mr. Hollander or his estate. Under such circumstances, the law in this Circuit provides that we are not responsible for the payment of Wal-Mart’s subrogation claim. Moreover, consistent with the foregoing, it appears that the $10,000.00 previously *785 paid to Wal-Mart should be refunded. Please make plans to do so.
J.A. at 99.
On November 30, 2000, the Plan Administrator responded that it would continue to insist on 100% reimbursement “based on the clear, plain reimbursement provision of the Plan and' in accordance” with Fourth Circuit case law. J.A. at 100. Furthermore, the Plan Administrator indicated that failure to forward the amount due would result in legal action.
On February 17, 2001, the Plan Administrator, by letter, informed Diggs that the Committee had decided to pursue the 100% reimbursement from Settlement II in accordance with the Plan’s language. This letter indicated that the file was turned over to the legal department.
On March 18, 2002, the Plan filed a complaint in the district court, alleging a claim for equitable relief under ERISA, 29 U.S.C. § 1132(a)(3)(B). Specifically, the Plan, as a fiduciary, sought restitution and imposition of a constructive trust on the proceeds of Settlement II. The district court held: (1) the Plan’s claims were barred by the applicable statute of limitations; and (2) even assuming, arguendo, the claims were not barred, the claims were meritless. This appeal follows.
II.
We review a district court’s grant of summary judgment de novo, using the same standards as the district court. Eckelkamp v. Beste, 315 F.3d 863, 867 (8th Cir.2002) (citation omitted). Summary judgment is only appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c) (2003); Bennett v. Federated Mut. Ins. Co., 141 F.3d 837, 838 (8th Cir.1998) (citations omitted).
Despite the Committee’s many arguments on appeal, the dispositive issue is whether the Committee’s claim is time barred. We answer this question in the affirmative and, therefore, do not address the Committee’s other arguments.
Because ERISA does not contain a statute of limitations, the court “borrow[s] the most analogous state statute of limitations.” Duchek v. Blue Cross & Blue Shield of Dist. of Neb., 153 F.3d 648, 649 (8th Cir.1998) (citation omitted). “[T]he characterization of plaintiffs claim for statute of limitations purposes is a question of federal law.” Johnson v. State Mut. Life Assurance Co. of Am., 942 F.2d 1260, 1262 (8th Cir.1991) (citations omitted). Federal law also determines when the cause of action accrues. Bennett, 141 F.3d at 838 (citations omitted).
The Committee argues that the district court erred in applying Arkansas Code Annotated section 16-56-105,[8] a three-year statute of limitations, because this action is most properly characterized as a breach of written contract action to which Arkansas Code Annotated section 16-56-111,[9] a five-year statute of limitations, should apply. *786 We need not decide which statute of limitations applies because under either the three- or five-year statute of limitations, the Committee’s claim is barred because more than five years have passed since this cause of action accrued.
This action was filed on March 18, 2002; thus, the Committee’s claim is barred under either statute if it accrued prior to March 18, 1997. The Committee argues that the date on which the claim accrued was April 8, 2000: the date it became aware of Settlement II. We disagree.
Generally, this court applies the discovery rule to determine when a claim accrues. Union Pacific R.R. v. Beckham, 138 F.3d 325, 330 (8th Cir.1998) (holding that absent a contrary mandate from Congress, the discovery rule determines when a cause of action accrues in a federal question case). The discovery rule provides that “a plaintiffs cause of action accrues when he discovers, or with due diligence should have discovered, the injury that is the basis of the litigation.” Id. (citations omitted).
Diggs notified the Plan Administrator in writing, on January 16, 1997, that the Personal Representative had entered into Settlement I for $100,000 and that “Wal-Mart has no subrogation claim against any monies which are allocated for receipt by Mr. Hollander’s statutory beneficiaries as a result of their wrongful death claim, and that Wal-Mart’s rightful interest in this case lies against the assets of the estate of Patrick Hollander....” J.A. at 58. The district court found that this statement was “a clear and unequivocal repudiation of the Committee’s claimed right to 100% reimbursement from the proceeds of any settlement related to the accident.” J.A. at 129. We agree and, accordingly, find that the claim accrued on January 16,1997.
The Committee fails to offer any legal support for its contention that the statement “[t]he Plan will pursue the remainder of its subrogation interest from future settlements received by the Hollander Estate,” J.A. at 44, somehow tolled the statute of limitations. As such, we agree with the district court that summary judgment was appropriate because the Committee’s cause of action was time barred.
III.
For the aforementioned reasons, we affirm the judgment of the district court.

. The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas.

. Separate named defendant Evelyn Soles was never served with a summons or complaint in this matter.

. The 1996 "RIGHT TO REDUCTION AND REIMBURSEMENT (SUBROGATION)” Plan provision provides, in relevant part:
The Plan has the right to ... recover (sub-rogate) 100% of the benefits previously paid by the Plan to the extent of any and all of the following payments:
• Any judgment, settlement, or any payment, made or to be made by a person considered responsible for the condition giving rise to the medical expense or by their insurers.
• Any auto or recreational vehicle insurance coverages or benefits including, but not limited to, uninsured motorist coverage.
• Business and homeowners medical liability insurance coverage or payments.
• Attorney's fees.
The Plan requires that you or your covered dependent cooperate to guarantee reimbursement to the Plan from third party benefits. Failure to comply with this request will entitle the Plan to withhold benefits due you under the Plan Document. You or your covered dependents may not do anything to hinder reimbursement of overpayment to the Plan after you have accepted benefits.
These rights apply regardless of whether such payments are designated as payment for, but not limited to:
• Pain and suffering
• Medical benefits
• Other specified damages
• Whether the participant has been made whole (i.e., fully compensated for his/her injuries):
To aid the Plan in its enforcement of its right of recovery, reimbursement, and sub-rogation, the participant must, at the Plan’s request and at its discretion:
• Take any action
• Give information
• Execute documents so required by the Plan
Failure to aid the Plan and to comply with such requests may result in the Plan withholding benefits, services, payments, or credits due under the plan.
Subrogation is when Wal-Mart pays your medical charges relating to your accident while waiting for the responsible party to settle. Repayment to the Plan of 100% will be made at the time the settlement is received by the associate, dependent, or their attorney.
J.A. at 71-72 (emphasis added).

. South Carolina Code section 15-5-90 entitled “Survival of right of action” provides: "Causes of action for and in respect to ... all injuries to the person ... shall survive both to and against the personal or real representative, as the case may be, of a deceased person ... any law or rule to the contrary notwithstanding.” S.C.Code Ann. § 15-5-90 (2002).

. South Carolina Code section 15-51-10 entitled "Civil action for wrongful act causing death” provides:
Whenever the death of a person shall be caused by the wrongful act, neglect or default of another and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, the person who would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, although the death shall have been caused under such circumstances as make the killing in law a felony. In the event of the death of the wrongdoer, such cause of action shall survive against this personal representative.
S.C.Code Ann. § 15-51-10.
South Carolina Code section 15-51-20 entitled "Beneficiaries of action for wrongful death; by whom brought” provides:
Every such action shall be for the benefit of the wife or husband and child or children of the person whose death shall have been so caused, and, if there be no such wife, husband, child or children, then for the benefit of the parent or parents, and if there be none such, then for the benefit of the heirs of the person whose death shall have been so caused. Every such action shall be brought by or in the name of the executor or administrator of such person.
S.C.Code Ann. § 15-51-20.

.See supra notes 4 and 5.

. See supra note 3.

. Arkansas Code Annotated section 16-56-105 states, in relevant part, that "[t]he following actions shall be commenced within three (3) years after the cause of action accrues: (1) All actions founded upon any contract, obligation, or liability not under seal and not in writing ...; (3) All actions founded on any contract or liability, express or implied.” Ark.Code Ann. § 16-56-105 (2002).

. Arkansas Code Annotated section 16-56-111 states, in relevant part, that "[ajctions to enforce written obligations, duties, or rights ... shall be commenced within five (5) years after the cause of action shall accrue.” Ark. Code Ann. § 16-56-111.